# Finklea *v.* Farish.

## *Contest of Election.*

(Decided April 21, 1909. Rehearing denied May 11, 1909.
49 South. 366.)

1. *Constitutional Law; Limitations.*—Legislative powers are derived from the people and not from the Constitution, and are without limit save as limited by the Constitution.

2. *Officers; Qualifications.*—The provisions of section 182, Constitution 1901, do not import a disqualification to hold office, but simply from registering and voting; section 60 of the Constitution provides for the disqualification for holding office and indicate an intent to leave the general qualifications for office other than those specified in said section, to the determination of the legislature.

3. *Same; Ineligible.*—By the use of the term ineligible in section 1467, Code 1907, and in the Constitution reference is had to the time of election and not to the time fixed for entering upon the office.

4. *Elections; Contest; Who Entitled to.*—One who has not complied with the requirement as to the payment of poll tax cannot contest the election provided for contest by section 455, Code 1907, since under section 178, Constitution 1908, he was not qualified to participate in the election if over twenty-one and under 45 years of age.

5. *Same; Persons Entitled to Vote; Poll Tax.*—One who became 21 years of age in June, 1903, was subject to poll tax which became due and payable October 1, 1903, and delinquent February 1, 1904, was not a qualified elector in the year 1908. said tax not having been paid.

6. *Constitutional Law; Construction; Self Operating Provision.*—Sections 178 and 194, are self operative and do not require legislative action to make them so.

(Simpson, Denson and McClellan, JJ., dissent in part.)

APPEAL from Monroe Probate Court.

Heard before Hon. I. B. SLAUGHTER.

[Finklea v. Farish.]

B. B. Finklea was declared elected to the office of Tax Collector of Monroe county, whereupon, J. P. Farish, filed a contest which was sustained, and from this judgment, the contestee appeals. Reversed and rendered.

BARNETT & BUGG, and MILLER & MILLER, for appellant.—The statutory system of contesting elections in this state is the only mode prescribed and any material departure therefrom is unauthorized.—*Black v. Pate,* 130 Ala. 514; *Wilkerson v. Duncan,* 114 Ala. 659; *Hilliard v. Brown,* 97 Ala. 92. Contestee held a registration certificate from the proper authority and this is conclusive as to that matter.—*State v. Crenshaw,* 138 Ala. 503. Section 60 prescribes the only disqualification for holding office in this state, and the legislature cannot add to or take from it.—*Dorsey's case,* 7 Port. 293; 19 Cyc. of Law, 397. Anyone is eligible to office who is not rendered ineligible by the Constitution.—*Barker v. People,* 15 Am. Dec. 322; *Shepherd v. Dowling,* 127 Ala. 6. The burden of proof is on the contestant to show want of eligibility.—*Black v. Pate, supra.*. Having failed to pay his poll tax which became due Oct. 1, 1903, and delinquent on Feb. 1, 1904, the contestant was not in a position to contest the election. The Frost case has no application for the reason that the charter of the town which was then being construed required that the person elected mayor should be a qualified elector at the time of his election. Counsel cite and discuss many authorities from other jurisdictions in regard to the meaning of the word, "ineligible" and its reference as to time of applicability, and conclude it has reference to the time of taking office and not to the time of the election.

McCLELLAN & McDUFFIE, O. O. BAYLESS, McCORVEY & HARE and HYBART & BURNS, for appellee.—The bond

filed for contest was proper.—*Hilliard v. Brown,* 15
South. 605; *McDonald v. Woods,* 118 Ala. 589. Counsel
discuss and refer to the sections of the Constitution and
the statutes relative to the matter in hand, and insist
that the contest was properly filed, that the contestant
had a right to file the contest and that the judgment ren-
dered was proper.

SAYRE, J.—This appeal arises out of a contest of
appellant's election to the office of tax assessor of Mon-
roe county, for which he received a majority of votes at
the general election held November 3, 1908. The grounds
of contest were stated as follows: (A) The said B. B.
Finklea was not at the time of said election, on the 3d
day of November, 1908, a qualified elector in and for
said county of Monroe; he not having paid the .poll tax
due from him as a male inhabitant of this state for the
year 1908, on or before the 1st day of February, 1908,
as provided by section 178 of the Constitution of 1901
of the state of Alabama. Petitioner further avers that
the poll taxes due from the said B. B. Finklea for the
years 1901, 1902, 1903, 1904, 1905, and 1906 were not
paid by him until some time in the month of October,
1908, just preceding the election aforesaid. (B) For
that said B. B. Finklea was not a resident of the state
of Alabama for two years immediately preceding the
3d day of November, 1908. (C) For that the said B.
B. Finklea was not a resident of the state of Alabama
for the requisite period of time next preceding the day
of his registration. There was judgment against the
contestee, appellant.

There does not appear to have been any serious con-
test as to the facts bearing upon the issues raised by any
of the grounds of contest, and in respect to those grounds
designated as "B" and "C" we deem it sufficient to say

that the evidence adduced upon the trial shows to our satisfaction that the contestee had been a resident citizen of the state of Alabama—and of the county of Monroe, if that had been made material by the grounds stated—since his birth, with only occasional temporary absences on business; nor was there any evidence from which reasonable inference could be drawn that he had at any time abandoned his residence in said state and county.

The serious contention relates to the ground of contest designated as "A" in the record. The evidence showed without conflict the existence of the facts particularized under that ground, and further that the contestee was born May 17, 1878, and had been registered as a voter in Monroe county May 5, 1908. Section 1467 of the Code of 1907 provides as follows: "The persons who are eligible to, and disqualified for holding office under the authority of this state, are: (1) Those who are not qualified electors, except as otherwise expressly provided." Section 178 of the Constitution of 1901: "To entitle a person to vote at any election by the people, he shall have resided in the state at least two years, in the county one year, and in the precinct or ward three months, immediately preceding the election at which he offers to vote, and he shall have been duly registered as an elector, and shall have paid on or before the first day of February next preceding the date of the election at which he offers to vote, all poll taxes due from him for the year nineteen hundred and one, and for each subsequent year." The contest was instituted as provided in section 455 of the Code; the effort being to state a ground of contest in accordance with subdivision 2 of that section. The parts of section 455 material in this connection are as follows: "The election of any person declared elected to * * * any office which is filled by the

[Finklea v. Farish.]

vote of a single county * * * may be contested by any person who was at the time of either of the said elections a qualified elector, for any of the following causes: * *-* (2) When the person whose election to office is contested was not eligible thereto at the time of such election." It thus appears from the undisputed facts and the unambiguous language of the Constitution that contestee was not a qualified elector at the time of the general election held November 3, 1908; but, under the terms of section 2094 of the Code, the term of office of tax assessors elected on November 3, 1908, will begin on the 1st day of August, 1909, and the question of chief importance is whether the contestee's qualification as an elector subsequent to November 3d, and prior to August 1st, to follow, shall be held to have qualified him to hold the office when its term shall begin.

1. The Constitution contains a number of sections defining and stating qualifications for office. Detailed qualifications are stated in respect to the offices of Senators and Representatives, judges, executive officers of the state, sheriffs, and solicitors.—Const. 1901, §§ 47, 116, 117, 132, 138, 154, 167. There are no detailed qualifications in respect to the office of tax assesosr. It would not therefore impede the progress of the argument of the case in hand should it be conceded that, where the Constitution itself prescribes in detail the qualifications for office, the Legislature may not add to or diminish them. The constitutional qualifications affecting tax assessors are those general qualifications which affect all others of the state, and have reference to conviction for infamous crimes, dueling, and the holding of two offices of profit at one and the same time.— Const. §§ 60, 86; Id. § 1 of article 17. None of them would exclude the contestee from the office of tax assessor, but the contention is that the Legislature cannot

[Finklea v. Farish.]

add to the general qualifications for holding office. The theory of this contention is that eligibility to office belongs to all persons not excluded by the Constitution as an attribute of citizenship, and therefore the Legislature cannot impose any general qualification which the Constitution does not require.—*Barker v. People,* 3 Cow. 686, 15 Am. Dec. 322; *State v. George,* 23 Fla. 585, 3 South. 81; *Thomas v. Owens,* 4 Md. 189; *Steusoff v. State,* 80 Tex. 428, 15 S. W. 1100, 12 L. R. A. 364; .and our own case of *Kentz v. Mobile,* 120 Ala. 623, 24 South. 952, and *Dorsey's Case,* 7 Port. 293—sustain the general aspect of the argument. But this court has for long stood by the doctrine that the Constitution is not the source of legislative power, and there are no limits to the legislative power of the state government save such as are written upon the pages of its Constitution.—*Dorman v. State,* 34 Ala. 216; *Davis v. State,* 68 Ala. 58, 44 Am. Rep. 128; *Sheppard v. Dowling,* 127 Ala. 1, 28 South. 791, 85 Am. St. Rep. 68. In *Kentz v. Mobile,* supra, a provision in the charter of the city of Mobile which required that the recorder, therein provided for, should be learned in the law and a practicing attorney, was declared to be offensive to that section of the Declaration of Rights of the Constitution of 1875 which provided: "That all persons resident in this state, * * * are hereby declared citizens of the state of Alabama, possessing equal civil and political rights." That was decided in 1898. The decision in *Dorsey's Case* was based upon the first section of the Declaration of Rights of the Constitution of 1819, and proceeded upon like considerations. Section 3, art. 8, of the Constitution of 1875 was as follows: "The following classes shall not be permitted to register, vote or hold office: First.— Those who shall have been convicted of treason, embezzlemen of public funds, malfeasance in office, larceny,

bribery, or other crime punishable by imprisonment in the penitentiary. Second.—Those who are idiots or insane." The Constitution of 1901 deals with the same subject in a manner significantly different. Section 182: "The following persons shall be disqualified both from registering, and from voting, namely: All idiots and insane persons; those who shall by reason of conviction of crime be disqualified from voting at the time of the ratification of this Constitution; those who shall be convicted"—here follows a list of offenses much enlarged over the list set out in the first subdivision of section 3, art. 8, Const. 1875. Now section 60 of the Constitution of 1901: "No person convicted of embezzlement of the public money, bribery, perjury, or other infamous crime, shall be eligible to the Legislature, or capable of holding any office of trust or profit in this state." These quotations from the suffrage articles of the two Constitutions demonstrate that as for anything said in the Constitution, a disqualification to vote and register under the Constitution of 1901 does not import a disqualification to hold office. Section 60 is the sole general regulation of qualifications for office. These adjunctive changes made, the omission by the framers of the Constitution of 1901 to carry forward a section of like nature as section 2 of the Bill of Rights of 1875 and similar sections in previous Constitutions, evinced a purpose to change the policy of the state, to avoid the implications adjudged to arise out of such sections in *Dorsey's Case* and in *Kentz v. Mobile, supra,* to leave the general qualifications for office—other than those enumerated in section 60—to the discretion and determination of the Legislature.

2. In the cases reported in other jurisdictions, there appears some confusion as to whether "eligible," as used in the Constitution and statutes concerning elections to

office, means capacity to hold office at the time of the election, so that the subsequent removal of the disability will not qualify, or whether it means capacity at the time fixed for entering upon the office. The etymology, as well as the popular meaning of the word, indicates a reference to the time of election.—*Taylor v. Sullivan*, 45 Minn. 309, 47 N. W. 802, 11 L. R. A. 272, 22 Am. St. Rep. 729; *Roane v. Matthews*, 75 Miss. 94, 21 South. 665. In our own case of *Frost v. State*, 45 South. 203, it appears to have been assumed as needing neither argument nor citation of authority that "eligible'" in the connection here used means capacity to hold office at the time of the election. Possibly the point here urged was not taken there, or, if taken, it may not have been deemed deserving of comment. However that may have been, we are of opinion that the contention now made does not impair the soundness of the decision in that case. In the present case a neutral interpretation of section 1467 of the Code leads to the conclusion that the ineligibility there pronounced refers to the time of election. This is made still clearer by the language of section 455, in pari materia. It there appears in the letter of the statute that the ineligibility which is made a ground of contest relates to the time of election. However reluctant we might be in a particular case to adopt a statutory construction which would fail to accord with the expressed popular will, we cannot assume, contrary to the plain language of the statute, that the people, in an enactment which must govern all cases, intended to permit a person to be elected to a public office who at the time is disqualified to enter upon its duties, and run the risk of the removal of the disability between the day of election and the commencement of the official term.—*State v. Moores*, 52 Neb. 770, 73 N. W. 299. The various objections taken to ground "A" of the contest

raised the questions we have considered, and were properly overruled.

The election of persons declared elected to certain offices, including the office of tax assessor, "may be contested by any person who was at the time of either of the said elections a qualified elector."—Code 1907, § 455. Contestant was born June 26, 1882, and was 21 years of age June 25, 1903. January 30, 1905, he paid his first poll tax; the amount paid being $1.50. He has not since then paid poll tax for any time previous thereto. These facts appeared without conflict. The appellant contended at the trial, and renews the contention here, that the contestant was not a qualified elector at the time of the commencement of the contest. The assertion is that a poll tax for the year 1903 became due and payable on October 1, 1903, and delinquent February 1, 1904. Section 178 of the Constitution of 1901 has already been quoted. Section 194: "The poll tax mentioned in this article shall be one dollar and fifty cents upon each male inhabitant of the state, over the age of twenty-one years, and under the age of forty-five years. * * * Such poll tax shall become due and payable on the first day of October in each year, and become delinquent on the first day of the next succeeding February." In *Frost v. State,* 153 Ala. 654, 45 South, 203, it was said: "In respect to the poll tax * * * the Constitution of 1901 is self-operative, making the levy in and by its own language, without legislative action"—citing *Francis v. Peevey,* 132 Ala. 58, 31 South. 372. And further in the same case: "Whatever may have been the purpose which inspired the framers of the Constitution to embody in that instrument sections 178 and 194, it is not a subject of controversy that all men (not exempt) over 21 years and under 45 years of age must, if they would qualify as voters, conform to the requirements of

those two sections." These observations were well grounded in the letter of the Constitution and need neither enlargement or qualification at this time. Our conclusion is that a poll tax of $1.50 became due and payable by the contestant on October 1, 1903, and delinquent February 1, 1904. If he was duly registered, he had the privilege of voting at any election held subsequent to June 26, 1903, and prior to February 1, 1904. Subsequently he became delinquent by the failure to pay a poll tax on or before the date last named. These conclusions follow from the plain language of section 194 of the Constitution. Section 4 of the act approved November 23, 1907, entitled an act to further regulate elections in the state of Alabama (Gen. Acts, Sp. Sess. 1907, p. 69), can have no effect to change the meaning or the operation of the Constitution. Contestant, under the view we take of the Constitution, was not a qualified elector at the time of the commencement of the contest in this case. It results that the judgment here rendered dismissing the petition for contest at the cost of petitioner.

Reversed and rendered.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.

DENSON, J. (dissenting.)—The contestant came of age in 1903. The point of the opinion and the conclusion of the majority of the court is that, by not paying a poll tax by or on February 1, 1904, he failed to qualify himself as executor. In *Frost v. State ex rel. Clement,* 153 Ala. 654, 45 South. 203, this court decided that the framers of the Constitution, in speaking of the payment of the poll tax for the year 1901, had in view, as the basis of time, the tax year as fixed by the statutes existing at that time, and that that cycle begins on Oc-

[Finklea v. Farish.]

tober 1st, and ends with the month of September following. The considerations upon which that conclusion was reached appear in the opinion in the Frost Case, and it is deemed unnecessary to repeat them here. Having reached that conclusion, the further conclusion naturally and logically followed that under the Constitution a citizen should not be deemed delinquent in respect to the payment of a poll tax until the 1st of February following the end of the tax year. If the construction given the Constitution in the *Frost Case* were applied in the instant case, the result would be that the contestant would be a qualified elector, and thus is demonstrated, not only the serious practical operation of the decision in the case in judgment, but also the great importance of adhering to the principle of stare decisis in such cases. It is more important that a rule of law should be fixed, even though with less reason in it, than subject to the uncertainty of fluctuating judicial decisions. "Certainty," said Lord Hardwick, "is the mother of respose, and therefore the law aims at certainty."—*Snider v. Burks,* 84 Ala. 57, 4 South. 225; *Martin's Case,* 79 Ala. 267.

Furthermore, a careful consideration of the opinion in the *Frost Case,* it is thought, can lead to no other conclusion than that the reasoning there employed is apt, and the conclusion reached a logical and sound one. In view of the conclusion reached, in the case in judgment, by the majority, the writer thinks the court has stopped short of its duty in not expressly overruling the *Frost Case,* as, otherwise, the law is left in a state of uncertainty on a question of supreme importance.

Being still of the opinion that the decision in the *Frost Case* is sound, and believing that the one here made is in conflict with it. I respectfully dissent.

SIMPSON and MCCLELLAN, JJ., join with the writer in dissenting.