(87 South. 587)

**GRAVES v. EUBANK, Tax Collector.**
(3 Div. 499.)

(Supreme Court of Alabama.   Jan. 13, 1921.)

**1. Elections ⬳11—National Woman Suffrage Amendment held to automatically repeal provisions of state Constitution and statutes.**

Const. U. S. Amend. 19, giving women the right to vote, automatically struck out from the state Constitution and statutes all discriminatory features authorizing only one sex to vote, or placing conditions or burdens on one not placed on the other as a condition precedent to the right to vote.

**2. Elections ⬳11—Word "male" stricken from constitutional provision defining electors by Woman Suffrage Amendment.**

Const. U. S. Amend. 19, providing that the right to vote shall not be denied or abridged on account of sex, automatically struck from Const. Ala. 1901, § 177, the word "male," as used in defining who are or who may become electors.

**3. Elections ⬳11—National Suffrage Amendment held to make applicable to women voters state constitutional requirement as to payment of poll tax.**

Const. U. S. Amend. 19, providing that the right to vote shall not be denied on account of sex, made Const. Ala. 1901, §§ 178, 194, making the payment of a poll tax a condition precedent to the right to vote, applicable to women as well as men.

**4. Elections ⬳83—Women's status as to liability to pay poll tax as condition to vote governed by state Constitution, as amended by national Suffrage Amendment.**

In mandamus to compel tax collector to receive poll tax from a woman and to issue poll tax receipt, involving the question of how women's status as to liability for poll tax as a condition precedent to the right to vote was affected by the Woman Suffrage Amendment, the question of whether Gen. Acts 1920, Sp. Sess. p. 1, relating to payment of the poll tax, is a penal act, and whether it went into effect on its passage or not until 30 days thereafter,

held immaterial, since the fixation of a poll tax, the time of the accrual of the same and for the payment thereof as a condition to vote, as well as all exemptions therefrom, were provided for and regulated by the state Constitution, as amended by Const. U. S. Amend. 19, and Soldiers' Exemption Amendment, designated as section 194½.

**5. Elections ⬳83—Women of specified ages required to pay poll tax as condition to right to vote.**

Under Const. 1901, §§ 178, 194, requiring men between specified ages to pay a poll tax, to become due in October and delinquent on the 1st day of the next succeeding February, as a condition to the right to vote, and under Const. U. S. Amend. 19, giving women the right to vote, all women of specified ages on the 1st day of October were required to pay a poll tax on or before February 1st as a condition to the right to vote at elections occurring after February 1st.

McClellan, J., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Petition by Mary Lou Graves against A. H. Eubank, as Tax Collector, for mandamus to require the said Eubank, as Tax Collector, to receive poll tax of petitioner and issue her poll tax receipt. From a judgment denying the petition, petitioner appeals. Reversed and remanded.

The petition alleges that petitioner is over the age of 21 years and under the age of 45; that she is a duly registered elector of Montgomery county, and has been a bona fide resident therein for some time; that she tendered to the tax collector the amount of her poll tax, which became due October 20, 1920, and delinquent February 1, 1921; that as such tax collector he refused to receive the same and also refused to issue his official poll tax receipt. The respondent admitted all the allegations of the petition except the fact that the petitioner became liable for her poll tax, and sets up that the Nineteenth Amendment did not serve to levy a poll tax on women of the state; also that the act of the Legislature did not become effective until November 27, 1920, 30 days after its passage; also that the Constitution of the state levies a poll tax on men solely, and the Legislature was without authority to levy poll tax on women.

Bibb Graves, of Montgomery, for appellant.

Poll tax provision is a part of the suffrage law, and the Nineteenth Amendment struck the word "male" from all provisions of the Constitution relative to suffrage, and made women liable for poll tax. 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274; 103 U. S. 370, 26 L. Ed. 567; 7 Kan. 50.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

John Tilley, of Montgomery, for appellee.

It is not the liability for poll tax that is a qualification, but the payment when liable. Sections 178 and 194, Const. 1901. The liabilities for poll tax having accrued after October 1, 1920, the poll tax will not be due until October 1, 1921. 185 Ala. 439, 64 South. 57. The federal Constitution could not serve to levy a state tax.

E. J. Garrison, of Ashland, amicus curiæ.

The act is not penal, and therefore became effective September 27, 1920. The effect of the amendment was to nullify all the provisions of our Constitution and statutes which deny women the right to vote. Section 10 of the act has no practical effect, and does not effect its constitutionality. 196 Pa. 614, 46 Atl. 861, 50 L. R. A. 91. To hold the act penal would be to render it unconstitutional. 179 Ala. 54, 60 South. 392, Ann. Cas. 1915C, 691. Equality and uniformity of taxation is the policy in Alabama. 80 Ala. 280, 60 Am. Rep. 99; 65 Ala. 200.

ANDERSON, C. J. [1-3] The question presented for decision upon this appeal is the liability vel non of a woman who has been duly registered to pay a poll tax between the 1st day of October, 1920, and February 1, 1921, as a condition precedent to a right to vote in subsequent elections. The Nineteenth Amendment to the federal Constitution, which became effective August 26, 1920, reads as follows:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of sex.

"Sec. 2. Congress shall have power to enforce this article by appropriate legislation."

This amendment automatically strikes from the state laws, organic and statutory, all discriminatory features authorizing one sex to vote and excluding the other, or placing conditions or burdens upon one not placed upon the other as a condition precedent to the right to vote, but in no wise interferes with, changes, or alters state laws with reference to elections that cannot and do not amount to a discrimination in favor of one sex against the other. It protects the man and woman alike, and a burden cannot be placed upon one sex that is not put upon the other, nor can a privilege, benefit, or exemption be given one to the exclusion of the other. The said amendment, by its own force and effect, strikes from section 177 of our state Constitution the word "male," as used in defining who are or may become electors, as well as where used in other parts of our organic or statutory laws when used in connection with the right and qualification to vote, and also strikes therefrom the use of the masculine pronoun where-ever it appears, so as to make the same include and applicable to both sexes. And as the said amendment prohibits a discrimination against women by section 177, and perhaps other provisions of our state law, it likewise prohibits a discrimination against men by sections 178 and 194 of our Constitution, and has the same effect upon these provisions as to the elimination of the male sex as when used in section 177 and other provisions. The result is that upon the final ratification of the Nineteenth Amendment it had the effect of making our organic as well as statutory laws applicable to men and women alike, and placed all women in the state upon the same footing with men, and those who were over 21 years of age and under 45 prior to October 1, 1920, were so to speak, put in the same shoes of a man who became 21 years of age between the ratification of the amendment and said 1st day of October, 1920. In other words, if the man became liable to a poll tax payable October 1, 1920, and delinquent the 1st of the following February, the women who were over 21 and under 45 years of age are likewise liable for said poll tax as a condition precedent to the right to vote in succeeding elections.

This ruling conforms to and harmonizes with the previous rulings of the United States Supreme Court upon kindred or analogous questions. In case of Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567, the question presented was the effect that the Fifteenth Amendment had upon the laws of Delaware which required that all jurors should be "white male electors." The court held that the federal amendment had the effect, of its own force, and without the aid of Delaware legislation, of striking from the existing law of Delaware only the word "white" and left all of the rest of said law undisturbed. This Neal Case, supra, was cited approvingly in Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274. It was again cited and approved in the case of Guinn v. U. S., 238 U. S. 362, 35 Sup. Ct. 930, 59 L. Ed. 1340, L. R. A. 1916A, 1124, wherein the court, speaking through the Chief Justice, said:

"While in the true sense, therefore, the amendment gives no right of suffrage, it was long ago recognized that in operation its prohibition might measurably have that effect; that is to say, that as the command of the amendment was self-executing and reached without legislative action the conditions of discrimination against which it was aimed, the result might arise that as a consequence of the striking down of a discriminating clause a right of suffrage would be enjoyed by reason of the generic character of the provision which would remain after the discrimination was stricken out. Ex parte Yarbrough, 110 U. S. 651; Neal v. Delaware, 103 U. S. 370. A familiar illustration of this doctrine resulted

from the effect of the adoption of the amendment on state Constitutions in which at the time of the adoption of the amendment the right of suffrage was conferred on all white male citizens, since by the inherent power of the amendment the word 'white' disappeared and therefore all male citizens without discrimination on account of race, color, or previous condition of servitude came under the generic grant of suffrage made by the state."

[4] Since the fixation of a poll tax the time of the accrual of same and for the payment thereof as a condition to vote, as well as all exemptions therefrom, are provided for and regulated by our state Constitution, as amended by the Nineteenth Amendment as well as the Soldiers' Exemption Amendment, designated as section 194½ of the Constitution, this instrument controls in the settlement of the question here presented, and so much of the act of 1920 (page 1, Special Session) can have no bearing upon the same, and so much thereof as deals with this particular question is merely cumulative and is of little or no consequence, whether said act is or is not a penal one or whether it went into effect upon its passage or not until 30 days thereafter.

In the case of Shepherd v. Sartain, 185 Ala. 454, 64 South. 57, following the case of Finklea v. Farish, 160 Ala. 230, 49 South. 366, and qualifying the case of Frost v. State, 153 Ala. 654, 45 South. 203, the opinion says:

"In accordance with the latter case [referring to the Finklea Case], which it is conceived involved a construction of section 194 of the Constitution, we now conclude:

"(1) The Constitution [section 194] levies the poll tax according to age at the time the tax is declared to be due, viz., on the 1st day of October of each year, and the Legislature has no power to change the operation of that provision.

"(2) One who becomes 21 years of age before the 1st day of October of any year is subject to the poll tax due on that date."

[5] The result is that, the Nineteenth Amendment becoming operative prior to the 1st day of October, 1920, all women who were over 21 years of age and under 45 on said date became liable to the payment of the poll tax due on said date and which would become delinquent the 1st of the following February as a condition to vote in succeeding elections, and this appellant, having tendered the tax collector the amount of her tax, is entitled to the writ of mandamus compelling the acceptance of same and the issuance to her of a receipt therefor, and which said writ was erroneously denied by the trial court. It must not be understood from this holding that the court means to intimate that any vote heretofore cast in the November election or any other election held prior to the 1st day of February, 1921,

is invalid when cast by those who acquired the right to vote by virtue of the Nineteenth Amendment, but we do hold that, in order to vote in future elections occurring after the 1st of February, they must have paid the poll tax which becomes delinquent on said 1st day of February.

While the law as declared in the case of Frost v. State was departed from in the case of Finklea v. Farish, and not only departed from in the Sartain Case but said Frost Case was expressly qualified, the same has never been expressly overruled, for the reason, no doubt, that a majority in each instance were of the opinion that Frost did not become 45 years of age prior to the time the tax became due, October 1, 1906. He was born October 2, 1861, and by excluding his birthday, which was conceded to be proper in the opinion as well as the briefs in said case, he did not become 45 years old before the tax became due, October 1st, but on the day that it became due. In other words, he was 45 years of age the day the tax was due, and going upon the theory that but one day could be excluded, he was not 45 before the tax became due and was not therefore exempt from the payment of same; and there was some reason for feeling that the right result had been reached in said case, notwithstanding the unsoundness of the reason given for same. Upon a reconsideration of this Frost Case, however, we are not only of the opinion that the reasoning of same was properly overturned in the two later cases, but it should have been expressly overruled. Under the law as applicable, Frost was 45 years of age October 1, 1906, the day the tax fell due, and if the Constitution exempted those over 45, he would have been liable; but upon a closer analysis of section 194 of the Constitution, we are of the opinion that it is the fixation of a tax on certain ones and not an exemption. In other words, it places a tax on those "over age of 21 years and under 45 years of age." Frost on October 1, 1906, was 45 years of age and not "under the age of 45" as fixed by the Constitution. We therefore expressly overrule said case of Frost v. State, 153 Ala. 654, 45 South. 203.

The case of State v. Doster Drug Co., 196 Ala. 447, 71 South. 427, did not involve the question here in hand, as it was dealing with escape property taxes, and the citation of section 194 of the Constitution, which deals exclusively with the poll tax, was inapt. The citation of the Frost Case was also, no doubt, due to inadvertently overlooking the fact that it had been repudiated by the more recent Finklea and Sartain Cases.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

All Justices concur, except McCLELLAN, J., who dissents.

THOMAS, J. (concurring). I concur in the opinion of the Chief Justice after noting the general expression in State v. Doster-Northington Drug Co., 196 Ala. 447, 71 South. 427, to the effect that the tax year commences October 1st and ends on September 30th, citing Frost v. State, 153 Ala. 654, 45 South. 203; Hooper v. State, 141 Ala. 111, 37 South. 662; and the reference to the poll tax year in the Constitution. The later cases of Shepherd v. Sartain and Finklea v. Farish, dealing with Frost v. State, supra, were overlooked. The question for decision in State v. Doster-Northington Drug Co., supra, was that of the time for assessment of the property tax, and when the same may be set aside or corrected by the State Tax Commission.

McCLELLAN, J. (dissenting). In my opinion, the women of Alabama, otherwise qualified to vote, who were over the age of 21 years and under the age of 45 years on October 1, 1920—enfranchised as the result of the ratification of the Nineteenth (Suffrage) Amendment to the Constitution of the United States, proclamation of which was made on August 26, 1920—are not required, as a condition to qualification to vote in this state, to pay a poll tax between October 1, 1920, and February 1, 1921; and hence the writer would affirm the judgment of the court below. The burden upon this condition to their right to vote is not imposed by or justified by the Constitution of this state, they not having been liable to poll tax on October 1, 1919, the beginning of this tax year. To exact this payment without the sanction of the Constitution is not to be justified.

The effect of the adoption of the Suffrage Amendment was to eliminate from the Constitution and statutes of Alabama all provisions operating, at that time, to discriminate between citizens because of sex, in respect of their right to vote. Neal v. Delaware, 103 U. S. 370, 389, 26 L. Ed. 567; Guin v. U. S., 238 U. S. 362, 35 Sup. Ct. 926, 59 L. Ed. 1340, L. R. A. 1916A, 1124. The result is that the provisions of Alabama's Constitution and statutes conferring and prescribing the right to vote now confer and prescribe such right without discrimination on account of sex.

A further consequence of the adoption of the Suffrage Amendment was that the date of the proclamation of the adoption of the amendment was the date upon which women, otherwise qualified to vote under the Constitution and laws of Alabama, became entitled to meet the regulations and requirements necessary to qualify them to vote in this state, regardless of their sex.

The Constitution of Alabama (1901, §§ 178, 194) must be now read as prescribing that all persons between the ages of 21 and 45 years (not exempted and otherwise qualified) shall voluntarily pay, within the period prescribed by section 194 of the Constitution, a poll tax of $1.50 for each year they are "due" (Const. § 178) to pay the same as a condition to the enjoyment of the right to vote. Frost v. State ex rel., 153 Ala. 654, 665, 45 South. 203.

The single question presented by this appeal is a constitutional, and not a statutory, inquiry; the Legislature being without power to enact to an effect different from that prescribed by the Constitution. This question is: Consequent upon the stated status fixed by the adoption of the Suffrage Amendment, are women (otherwise qualified) who desire to perfect their right to vote in elections occurring after February 1, 1921, "due" to pay, liable for, the poll tax exacted by section 178 and 194 of the Constitution, within the period prescribed in the organic law, between October 1, 1920, and February 1, 1921? The correct decision of this question depends upon whether the prescription with respect to poll tax in sections 178 and 194 refer to, contemplate, the tax year, as held in Frost v. State, supra, and in the very recent unanimous declaration in State v. Doster-Northington Drug Co., 196 Ala. 447, 450, 71 South. 427, or whether, on the other hand, the $1.50 therein prescribed is but a mere money exaction, payable between October 1st and February 1st, dissociated from any tax year, as declared, in effect, in Shepherd v. Sartain, 185 Ala. 439, 454, 64 South. 57. In the last pronouncement by this court, all Justices concurring in the opinion, this court said (State v. Doster-Northington Drug Co., 196 Ala. 450, 71 South. 428, delivered in 1916):

"When the Constitution required the payment of poll tax for the year 1901, before February 1st, it referred to the tax year as fixed by the statute of 1900–01; this poll tax having become fixed on October 1, 1900, and due on October 1st succeeding. Const. § 178."

This is an accurate statement of the conclusion prevailing, on full consideration, in Frost v. State, 153 Ala. 654, 665, 666, 45 South. 203.

At page 454 of 185 Ala., at page 63 of 64 South. (Shepherd v. Sartain, decided in 1913), a different view was expressed from that entertained on full consideration in Frost v. State, supra (decided in 1907), and reiterated in State v. Doster-Northington Drug Co., supra, and this upon the sole ground that a departure from this doctrine of Frost v. State was taken in the case of Finklea v. Farish, 160 Ala. 230, 238, 239, 49 South. 366. Reference to the Finklea-Farish Case discloses no purpose on the part of a majority of the court to overrule the presently pertinent doctrine, conclusively stated

by Denson, J., in Frost v. State. Indeed, in Finklea v. Farish parts of the opinion in Frost v. State are approvingly quoted—quotations that consisted with and induced the conclusion this court has recently restated in State v. Doster-Northington Drug Co., 196 Ala. 450, 71 South. 427. As pointed out in the dissenting opinion by Denson, J., in Finklea v. Farish, concurred in by Justice Simpson and the writer, it was only in the actual result announced in Finklea v. Farish that a departure from the pertinent doctrine of Frost v. State was to be found. It was said in Shepherd v. Sartain that the decision in Frost v. State was qualified to the extent Finklea v. Farish tokened a departure from its doctrine; but it is to be noted that Frost v. State was not expressly overruled, Shepard's Annotations interpreting its expression as explanatory only.

On this very important question the situation, then, is this: This court in 1907 deliberately held that the exaction of poll taxes as a condition to the right to vote referred to the tax year beginning, initially, October 1, 1900; in 1909 the court, without expressly taking account of the different doctrine of Frost v. State, supra, declared to a result opposed to the doctrine of Frost v. State, Justices Denson and Simpson and the writer dissenting upon the authority of Frost v. State; in 1913, in Shepherd v. Sartain, the court for the first time recognized the obvious conflict in the conclusion (only) prevailing in Finklea v. Farish and the doctrine stated in Frost v. State, and expressed in a somewhat dubious form an intent to affirm the doctrine of Finklea v. Farish; and in 1916—the last declaration on the subject —this court declared in the phrase above quoted from State v. Doster-Northington Drug Co., in repetition of the doctrine of Frost v. State. In this state of regrettable conflicting, irreconcilable views approved by this court—the last time unanimously—it seems to the writer that the question is, at least, still at large, and that this court should deliberate upon it; and, after so doing, it is not conceivable to the writer that the language of the Constitution and the logic of its very plain provisions could lead otherwise than to a reaffirmance of the correctness of the conclusive opinion of Denson, J., in Frost v. State, decided 13 years ago.

The constitutional convention that framed Alabama's Constitution convened on May 21, 1901. The convention completed its labors, submitting the present organic law, on September 3, 1901. Its entire existence was spent in the latter half of the tax year 1900–01; the year, for all purposes, including the laying of poll taxes, being the period beginning October 1, 1900, and ending with September 30, 1901. Frost v. State ex rel., 153 Ala. 654, 665, 45 South. 203; State v.

Doster-Northington Drug Co., 196 Ala. 447, 449, 450, 71 South. 427. The following provisions of the Constitution of 1875 and the statutes in force and effect when the present Constitution was framed contributed to the system established by the Constitution of 1875 and governed its details. Const. 1875, § 1, of article 11, section 4 of article 13; Code 1896, §§ 3910, 3907, 2889, 3575, stating exceptions from poll taxes; 3921, providing lien upon assessed property; 3919, stipulating when poll taxes were due and when delinquent; 4032–4034, governing the separate listing by tax collectors of poll taxes paid and directing their payment to the treasury. The makers of the Constitution of 1901 necessarily framed its provisions relating to poll taxes in view of the then existing system in our laws, organic and statutory. With presently unimportant changes, that system was appropriated by the makers of the present Constitution to the definition of a part of the qualifications requisite to entitle a citizen to vote. In section 178 the prescription in respect of poll taxes commenced with the current year, the "year 1901," and projected its requirement to include the poll tax "for each subsequent year." Obviously, this reference to year was to the tax year established in the statutes mentioned, and denominated in section 4 of article 13 of the Constitution of 1875 as "an annual poll tax." This is confirmed when it is considered that the initial poll tax required to be paid, as a condition to becoming entitled to vote, was the poll tax "due from him" for the then current year 1901. A poll tax for the "year" 1901 could not have been considered "due" (Const. § 178) otherwise than as required by the laws, constitutional and statutory, to which reference has been made. And as further emphasizing the intent of the makers of the Constitution of 1901, it is plainly provided in section 194 of the Constitution of 1901 that the prescription for payment of poll taxes should not apply to those who were then "now exempt by law" (italics supplied); the reference, of course, being to the classes exempt by provisions of then existing laws before cited. Subdivision 6 of Code 1896, § 3907, defined, at that time, a class exempt from poll taxes. They were, and are in virtue of the provisions of section 194 of the Constitution of 1901 (requiring the payment of poll taxes as a condition to the right to vote), those permanently disabled "whose taxable property does not exceed the value of five hundred dollars." The existence of this exception from liability for poll tax necessarily depended, and likewise now depends under the provisions of section 194 of the Constitution of 1901, upon the value of the "taxable property" owned by the disabled person for the year in which his poll would be otherwise demandable. As said in State

v. Birmingham Sou. Ry. Co., 182 Ala. 483, 62 South. 80, Ann. Cas. 1915D, 436:

Taxable property, "as repeatedly used in the several sections * * * of the Code relative to taxation, means, and can only mean, property which the Legislature has not constitutionally exempted from taxation."

The ascertainment of this essential fact to the determination of who are within the class ("permanently disabled") of persons exempt from poll taxes must be at the inception of the tax year as fixed in the statutes (Code 1896, §§ 3930, 3921), viz., on October 1st. Frost v. State, 153 Ala. 665, 45 South. 203. The exemption of this class from poll taxes is based upon a status determinable as respects its members, at the beginning of the tax year when assessments were, in 1900, and are now, required to be made; and hence the exemption declared in section 194 of the Constitution of 1901, by reference to laws "now" (at that time) exempting certain classes from poll taxes, necessarily referred to a status as respected the value of "taxable property" owned by persons permanently disabled, that had become, in that regard, fixed at the inception of the tax year 1900–01, viz., on October 1, 1900; and this view is still further emphasized by the express provision of section 178 of the Constitution of 1901, providing, as a condition to the right of those between 21 and 45 years of age to vote, that they, if not exempt by the existing laws, should pay the poll taxes "due" for the year 1901; thus indubitably, it seems to the writer, referring the poll tax to a tax period, a tax year, and not at all contemplating a mere monetary exaction dissociated from a tax period.

A reading of the debates in the constitutional convention of 1901 confirms the view stated. The chairman of the committee on suffrage, in discussing these poll tax provisions of the Constitution of 1901 then in process of formation and adoption by the convention, alluded to the poll tax required to be paid, as a prerequisite to the right to vote, as poll taxes that had "accrued" against the person desiring or intending to vote in subsequent elections. The Constitution (section 178) employed the word "due," while the chairman of the suffrage committee employed the word "accrue," evidently in the sense of a synonym for "due"; both terms signifying the maturity of an antecedent imposition. Cutcliff v. McAnally, 88 Ala. 509, 7 South. 331.

The suggestion is made that stare decisis requires adherence to the divergent doctrine stated in Shepherd v. Sartain, 185 Ala. 454, 64 South. 57, which, in its turn, followed Finklea v. Farish, 160 Ala. 230, 49 South. 366, where not only no reason was given for a departure from the well-considered doctrine of Frost v. State ex rel., 153 Ala. 654, 45 South. 203, but approving quotation therefrom was made. In the dissenting view written by Denson, J., in Finklea v. Farish, 160 Ala. 239, 240, 49 South. 366, the doctrine of stare decisis was invoked without avail. However, that doctrine can have no recourse in such a state of vacillating declaration as has been before noted, that last of which (State v. Doster-Northington) was made by a unanimous court three years after Shepherd v. Sartain was decided. If, as said by Stone, J., in Sadler v. Langham, 34 Ala. 334, it is, "perhaps, never too late to re-establish constitutional rights, the observance of which have been silently neglected" surely it is not too late to return to the correct interpretation of the Constitution taken by the only well-considered adjudication of this court touching the subject, especially since the last declaration by the unanimous court accords, perfectly, with that originally pronounced on mature deliberation.

According to both reason and authority, the trial court properly held that this petitioner (appellant) was not "due" the poll tax payable (by others, male or female, not in her class) in the period between October 1, 1920, and February 1, 1921, as a prerequisite to her right to vote in elections after February 1, 1921; but that the first poll tax demandable under the Constitution of those (male) becoming 21 years of age after October 1, 1919, or those enfranchised in consequence of the adoption of the Nineteenth Amendment, is the poll tax fixed by their status on October 1, 1920, the beginning of the tax year 1920–21, payable between October 1, 1921, and February 1, 1922.