MADDOX, Justice.
The primary issue in this case is the power of the Alabama legislature to authorize the payment to its members of an expense allowance during a recess of a special session of the legislature.
This case was commenced in the Circuit Court of Montgomery County, Alabama, on December 27, 1984, when the plaintiff, Jim Zeigler, filed a complaint against various state officials. The complaint, as finally amended, added two legislators from Montgomery County and the Alabama Senate *915 and Alabama House of Representatives as parties defendant. In this last amended complaint, Zeigler prayed for the following relief:
“1. A declaratory judgment that the $85.00 per day ‘expense payments’ to members of the legislature and to the Lt. Governor during this thirteen-day holiday recess is unreasonable and therefore unconstitutional.
“2. An injunction issued to defendant Brassell ordering him not to pay such ‘expense payments’.”
The defendants filed motions to dismiss the amended complaint, and these motions were heard by the lower court on January 9,1985. The defendants in their motions to dismiss alleged among other grounds that the plaintiff’s complaint, as last amended, failed to state a claim upon which injunc-tive or declaratory relief could be granted, and that the lower court was without jurisdiction to review the expense allowances fixed by the legislature for members of the Alabama legislature. The motions to dismiss were argued in detail, and the Court asked numerous questions of the attorneys for the parties during the oral argument which indicated the court’s concern about “its authority” to entertain the action. At the conclusion of the oral arguments, the Court stated as follows:
“THE COURT: ‘Well, I’m going to entertain testimony on this issue on the Motion to Dismiss.’ ”
When the plaintiff announced that he was calling Representative Bob McKee as his first witness, the court then stated that it was denying the motions to dismiss filed by the legislative defendants and further stated, “I’m going to take testimony on the preliminary injunction.”
Testimony was then taken from four witnesses, namely: Representative Bob McKee, Senator Larry Dixon, State Comptroller Tom Brassell, and Senator Steve Cooley.
At the conclusion of the testimony, the court took the matter under advisement, and then on January 15, 1985, issued a written order granting a preliminary injunction.
On January 16, 1984, the Alabama Senate, the Alabama House of Representatives, and Bill Baxley, individually and as Lieutenant Governor, filed a notice of appeal from the order and on the same date also filed this petition for writ of mandamus, supersedeas or other appropriate remedial writ and a motion to expedite the appeal in this Court.
The appeal was expedited, briefs were filed, and this Court heard oral arguments on the question.
The specific question presented is whether the lower court erred in enjoining the payment of expense allowances to members of the legislature during the recess of the special session. We hold that it did.
Article III, Section 1, of the Constitution of Alabama, 1875, provides as follows:
“Section 1. The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.
“Sec. 2. No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.”
Amendment 57 of the Constitution of 1901, in pertinent part, provides as follows:
“The pay of members of the legislature shall be ten dollars per day. Each member of the legislature shall be paid ten cents per mile in going from his residence to, and in returning to his residence from, the seat of government, to be computed by the nearest usual route traveled; and not more than one such travel allowance shall be paid for each session of the legislature. In addition to his travel allowance, each member of the legislature also shall be allowed ex *916 penses, other than actual expenses of traveling, not exceeding an amount to be fixed by the legislature, incurred in the performance of his duties; but such expense allowance shall not be less than the smallest allowance to any other person traveling within the state in the service of the state of Alabama, or any of its agencies, for expenses other than actual expenses of traveling. The provisions of this Constitution in conflict herewith are hereby modified to conform to the provisions of this amendment.” (Emphasis added.)
Pursuant to the express constitutional authority granted to it by Amendment 57, the legislature passed a series of joint resolutions,[1] which fixed legislative expense allowances at $55 per diem during a legislative session and an additional $400 per month during a legislator’s term of office. In November of 1983, the legislature adopted H.J.R. 12, which was approved and signed into law by Governor George C. Wallace on December 1, 1983, and became Act No. 83-849, which reads as follows:
“Act No. 83-849 H.J.R. 12-Rep. Boles
“HOUSE JOINT RESOLUTION
“TO PROVIDE ADDITIONAL PER DIEM EXPENSE ALLOWANCES AND ADDITIONAL MONTHLY EXPENSE ALLOWANCES TO MEMBERS OF THE LEGISLATURE.
“BE IT RESOLVED BY THE LEGISLATURE OF ALABAMA, BOTH HOUSES THEREOF CONCURRING, That each member of the Legislature shall be entitled to and shall be paid an additional thirty dollars ($30.00) per diem for expenses incurred in the performance of his or her duties for the duration of any regular or special session of the Legislature. Such expense allowance shall be in addition to all other allowances and expenses heretofore provided for members of the Legislature.
“BE IT FURTHER RESOLVED, That each member of the legislature shall be allowed an additional two hundred dollars ($200.00) per month for expenses incurred in the performance of his or her duties, to be paid at the end of each month during his or her term.
“BE IT FURTHER RESOLVED, That this order shall take effect upon the approval thereof by the Governor as provided in Article 5, Section 125 of the Constitution.
“Approved December 1, 1983.
“Time: 5:00 P.M.”
As is apparent from the Act, the legislature increased the legislative expense allowance by $30 per diem during any regular or special session and increased the monthly expense allowance by $200 per month.
In Hart v. deGraffenried, 388 So.2d 1196 (Ala.1980), an action was filed which challenged the constitutionality of a resolution adopted by the legislature which increased the per diem and monthly expense allowances of legislators. The resolution was adopted during an organizational session of the legislature. In that case, the following issues were raised:
“(1) Could the Alabama Legislature fix or alter the amount of legislative expense allowances by the adoption of a joint resolution?
“(2) Could the Legislature take action on legislative expense allowances during the course of an organizational session?
“(3) Does S.J.R. 13 violate Article XVII, Section 281 and Amendment 92 of the Alabama Constitution, because it increases the compensation being paid to legislators during the term for which they were elected?
“(4) Does S.J.R. 13 violate Article IV, § 72 of the Alabama Constitution by re *917 quiring the payment of money out of the State treasury without an appropriation?”
388 So.2d at 1197.
In affirming the judgment upholding the constitutionality of the legislative action, this Court held:
“Prior to the enactment of Amendment 57, Article IV, Section 49 of the Alabama Constitution was recognized as the exclusive governing authority on the fixation of legislative compensation and expense allowances. The provisions of that section were quite simple and did no more than establish a scheme of remuneration whereby legislators were to receive ‘... four dollars per day, and ten cents per mile in going to and returning from the seat of government, to be computed by the nearest usual route traveled’; however, this language was perceived as effectuating an express limitation on the otherwise plenary power of the Legislature. As noted by this Court in Hall v. Blan, 227 Ala. 64, 148 So. 601 (1938):
‘For more than half a century, we think it can be safely said, this section [§ 49] of the Constitution has been generally construed as fixing and withdrawing from legislative power the matter of personal compensation and expense allowances to legislators while in attendance at legislative sessions. Such has been the widely prevailing construction of similar constitutional provisions in other states.’
“The preclusion thus erected by § 49 did not remain, however. The people, by adopting subsequent constitutional amendments, changed the means by which legislative expense allowances could be established.
“Amendment 57 of the Constitution, ratified in November of 1946, presently stands as the governing constitutional section on legislative expense allowances. It is the language of this amendment, which the people approved, which sets out the limits of legislative power.”
The Court further opined:
“These provisions [of Amendment 57] operated to effectuate a partial reversal of the approach once mandated by the provisions of Section 49, restoring to the Legislature the plenary power and authority to act in matters concerning legislative expenses. The constraints once imposed upon the plenary power of the Legislature by Section ⅛9 were thus removed by Amendment 57. Matters of personal compensation remain beyond the scope of legislative province because the amount of compensation is specifically fixed by the Constitution; however, plenary power has been restored with regard to the fixation of legislative expense allowances.” (Emphasis added.)
Commenting on the plenary power of the legislature, this Court further opined:
“The appellants argue that the provisions of Amendment 57 empower the Legislature to effect legislative expense allowances only through the enactment of a law. We, however, cannot adhere to such a strict interpretation. To follow the appellants’ argument would require this Court to interpret the language of Amendment 57 as an implied limitation on legislative power. We do not believe the people intended to restrict legislative power so narrowly. The Legislature is laden with a broad form of governmental power which is plenary in character, and subject only to those express limitations appearing in the Constitution. As noted by this Court in County Board of Education v. Taxpayers and Citizens, 276 Ala. 472, 163 So.2d 629 (1964):
“ ‘There are no limits to the legislative power of state governments save those written into its constitution. All that the legislature is not forbidden to do by the organic law, state or federal, it has full power to do. The power of the legislature except as limited by constitutional provisions is as plenary as that of the British Parliament. Finklea v. Farish, 160 Ala. 230, 49 So. 366; State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283.’ ” (Emphasis added.)
*918 See also Hall v. Underwood, 258 Ala. 392, 63 So.2d 683 (1953), and Riley v. Bradley, 252 Ala. 282, 41 So.2d 641 (1948).
“We hold that Section 49 no longer stands as a limitation on the plenary power of the Alabama Legislature to enact S.J.R. 13. By virtue of Amendment 57, the Legislature now has express authority to ‘fix’ expense allowances. We hold that it may do so in the manner in which it deems most appropriate. S.J.R. 13 was a proper exercise of legislative discretion in fixing expense allowances and was adopted well within the bounds of the Legislature’s plenary power. Its validity is, therefore, due to be upheld.”
“Plenary” means absolute or exclusive, and “this Court has long stood by the doctrine that the Constitution is not the source of legislative power, and there are no limits to the legislative power of the state government save such as are written upon the pages of its Constitution.” Finklea v. Farish, 160 Ala. 230, 235, 49 So. 366 (1909).
Appellee argues that Act No. 83-849 is unconstitutional because “Amendment 57 limits Legislators’ pay to $10.00 per day,” and “[pjayment of more than that amount, however characterized, is unconstitutional” and “would also violate Amendment 92, which prohibits the raising of a legislator’s pay during his term of office.”
Appellee contends that a court has authority to inquire into the question of whether “expense payments are a de facto increase in compensation.”
This Court, in Hart, dealt specifically “with the fine distinction between compensation and expense” and held as follows:
“We are persuaded that under the applicable provisions of the Alabama Constitution the payment of legislative expense allowances has never been considered any part of the personal compensation awarded to Alabama legislators; rather, these expense allowances exist as a means of reimbursing legislators for expenditures incurred in being called away from home in service to the state and in carrying on their official responsibilities. On the basis of this conclusion, we hold that the enactment of S.J.R. 13 does not violate Section 281 or Amendment 92 by increasing a legislator’s compensation during his term in office.” (Emphasis added.)
That Amendment 92 is not a limitation on legislative power in the fixing of expense allowances incurred by a legislator in the performance of his or her duties is buttressed by the express statement in Amendment 57 that “[t]he provisions of this Constitution in conflict herewith are hereby modified to conform to the provisions of this amendment." (Emphasis added.)
Appellee states that “[t]he reading of Hart which the appellants urge upon this Court would apparently allow the Legislature, in its plenary power, to set ‘expense payments’ at $10,000 per day, and taxpayers would have no recourse to the courts to prevent such a raid on the treasury.”
We recognize that a hypothetical factual situation could be postured which would seem to give a court the power to inquire into the reasonableness of “expense allowances,” but we need not answer a hypothesized factual situation to answer the specific facts of this case.
Moreover, we hold that the people, by ratifying Amendment 57, instead of placing a limitation on legislative power, expressly authorized that “each member of the legislature shall be allowed expenses, not exceeding an amount fixed by the legislature." (Emphasis added.) The only limitation on the amount of those expenses is that the allowance “shall not be less than the smallest allowance to any other person traveling within the state in the service of the state of Alabama, or any of its agencies, for expenses other than actual expenses of traveling.” (Emphasis added.)
Amendment 57 puts a floor on the amount the legislature can fix, but it does not fix a ceiling. To authorize a court to inquire into the reasonableness of the amount fixed by the legislature would re *919 quire the court to include the word “reasonable” before the word “amount” in Amendment 57. Applying the doctrine of “separation of powers” and recognizing the plenary power of the Legislature, we conclude that we should not construe Amendment 57 to authorize a court to inquire into the amount the legislature has determined to be necessary to cover “expenses ... incurred in the performance of [the legislators’] duties.”
Chief Justice Gardner, writing for the Court in Alabama State Federation of Labor v. McAdory, 246 Ala. 1,18 So.2d 810 (1944), summarized this state’s law which is uniquely applicable when an act of the legislature is attacked as being unconstitutional, as is the case here:
“Uniformly, the courts recognize that this power is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitations imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and in-tendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283.
“Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are vio-lative of natural justice or in conflict with the court’s notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom. 11 Am.Jur. pp. 799-812; A.F. of L. v. Reilly, District Court of Colorado, 7 Labor Cases No. 61,761.” (Emphasis added.)
246 Ala. at 9, 10, 18 So.2d at 815.
We reaffirm the foregoing statement as the law of this jurisdiction; we therefore, reverse the judgment of the trial court granting a preliminary injunction, and the cause is hereby remanded, with directions, to the trial court, to dissolve the injunction, dismiss the cause, and assess such costs, damages, and reasonable attorneys’ fees as may have been incurred or suffered by the parties enjoined or restrained. Rule 65, Ala.R.Civ.P.
In light of our decision as to the appeal in 84-383, we dismiss the petition for writ of mandamus as moot. Alabama High School Athletic Association v. Medders, 456 So.2d 284 (Ala.1984).
84-383, REVERSED AND REMANDED, WITH DIRECTIONS.
84-378, PETITION DISMISSED.
TORBERT, C.J., and JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
FAULKNER and BEATTY, JJ., dissent.

. S.J.R. 6 — 1947, Organizational Session
S.J.R. 5 — 1947, 1st Extraordinary Session
S.J.R. 16 — 1950, 5th Special Session
S.J.R. 4 — 1955, Organizational Session
S.J.R. 4 — 1967, Special Session
S.J.R. 15 — 1975, Organizational Session
S.J.R. 13 — 1979, Organizational Session