THE STATE OF DELAWARE, ex rel. Albert W. James, Attorney-General, v. NORMAN E. BATTERSBY, GEORGE E. RAMSEY *and* RODNEY H. DANN.

*(November 12, 1947.)*

SPEAKMAN and PEARSON, J. J., sitting.

*Stewart Lynch* and *Daniel L. Hermann* for relator.

*J. Pearce Cann* and *Percy Warren Green* for respondents.

Superior Court for New Castle County, No. 187, May Term, 1947.

---

¹ Chapter 175, Volume 18, Laws of Delaware, as amended by Chapter 641, Volume 18, and as further amended by Chapter 193, Volume 24, provides as follows:

"Section 31.  It shall be the duty of the assessor of said town annually to make a true, just and impartial valuation and assessment of all the real estate within said town, and also * * * such personal property of such citizens as is subject to county assessment and taxation. * * * 'Every male citizen, of said Town, above the age of twenty-one years, shall be assessed for a capitation or poll tax in addition to his assessment for his real and personal estate, at a capital to be fixed by Council, which, however, shall not exceed One Hundred Dollars.' * * * The said assessor shall make such assessment and return the same to the council of said town within six weeks next after the election of said assessor [which by Sec. 13 of the Town Charter, is on the Tuesday evening next ensuing the annual election].

"The council of said town shall within ten days next after receiving said assessment list cause a full and complete transcript thereof to be hung up in said town at that place designated by the said council.  On the third Monday after said list is hung up as aforesaid, said council shall hold a court of appeals, which shall continue open from one o'clock P. M. to six o'clock P. M., when they shall hear and determine appeals from the said assessment, and may make corrections of or additions to the same.  Notice of the hanging up of the said assessment list, and also at the same time notice of the time and place of hearing appeals shall be given by posting such notices in at least ten public places in the town of Newark.  The determination of the council of said town upon any appeal, or upon any matter relating to such assessment shall be final and conclusive.  No member of council of said town shall sit upon his own appeal, but the same shall be heard and determined by the other members of said council.  After the said valuation and assessment shall be examined and adjusted by the council of said town, all taxes shall be levied, assessed and raised on the real estate, personal property and persons thus valued and assessed in just and equal proportions and rates."

Said Chapter 175, Volume 18, further provides as follows:

"Section 32.  The council of said town, after having ascertained the sum necessary to be raised on the said town for the purposes of this act, * * *, shall annually in the month of May, or as soon thereafter as convenient, cause to be delivered to the collector of taxes, or

SPEAKMAN, J., delivering the opinion of the Court:

This case will be decided and disposed of in accordance with the stipulation entered into by counsel for the parties. There are no controverted questions of fact which we have found to be controlling in arriving at our conclusion.

This case has been argued on the theory that the effect of the Nineteenth Amendment was to strike out the word "male" in the phrase "Every male citizen, of said Town, above the age of twenty-one years, shall be assessed for a capitation or poll tax * * *," in Section 31 of the Town Charter. In 18 Am. Jur. 227, there will be found the following language: "Whether the adoption of the Nineteenth Amendment to the Federal Constitution had the effect of rendering women subject to a poll tax qualification theretofore applied to men only is a question which has been answered in the affirmative in some jurisdictions and in the negative in others."

Annotation 71 A.L.R. 1335, 1336, is given as the supporting authority. In the annotation on this point there are but two cases considered. One is *Graves v. Eubank*, 1921, 205 *Ala.* 174, 87 *So.* 587, in which the answer is in the affirmative, and the other is *Davis v. Warde*, 1923, 155 *Ga.* 748, 118 *S.E.* 378, writ of error dismissed by stipulation in, 1923, 263 *U.S.* 725, 728, 44 *S. Ct.* 3, 68 *L. Ed.* 527, in which the answer was in the negative. We will not attempt to distinguish the cases, nor to contrast either of them with the case before us for determination. We have given no serious consideration to the question whether,

---

in case of his absence, or inability to the treasurer of said town, a list containing the names of the taxables as well as the owners of real estate as those not owning real estate, and opposite the name of each the amount of the real estate his poll and assessable personal property, * * *; which lists shall be signed by the president of said council, the collector of said taxes, or in case of his absence or inability, the treasurer of said town, immediately after receiving said list shall proceed to collect the taxes rated and contained in the same, * * *."

by reason of the Amendment, the adult women residents of the Town of Newark have been subject to assessment for a capitation or poll tax since the adoption of the Amendment. In our view of the case, it may be assumed, without affecting the ultimate result, that women as well as men were subject to assessment and liable for payment of the poll tax.

At the annual election held in the Town of Newark on April 8, 1947, for the purpose of electing certain town officers, the following votes were cast for the offices of members of Council: In the Western District, two hundred and forty-three, of which the respondent, Rodney H. Dann, received one hundred and twenty-five, or a majority of three; in the Middle District, two hundred and eighteen, of which the respondent, George E. Ramsey, received one hundred and forty-seven, or a majority of seventy-six, and in the Eastern District, ninety-two, of which the respondent received seventy-two, or a majority of fifty-two. It is not contended that any of those who voted did not possess the requisite qualifications as to age, residence, and the payment of a town tax, as provided in Section 29 of the Town Charter. Nor is it contended that any of the respondents did not possess all the necessary qualifications for election to the office of member of Council. The three respondents were declared elected as members of Council, and each took his oath of office on or about April 15, 1947.

It is charged in the information that "more than one hundred individuals were not permitted to vote" at the election. In support of the charge it has been shown that one hundred and six non-property owners of the Town of Newark, who, except for the payment of a tax for the year immediately preceding the election, were otherwise qualified, appointed one Harry H. Cleaves, as agent, to tender payment of a poll tax for each of such non-property owners to the

Town Assessor and the Town Treasurer, in order, as claimed on behalf of the relator, that each non-property owner might qualify himself or herself to vote under an alleged previously established practice as to the payment of poll taxes. It was further shown that on April 7 and 8, 1947, Cleaves presented himself, as agent for each of the one hundred and six non-property owners, to the Town Assessor and to the Town Treasurer, displayed his written authority as agent, and tendered payment of poll taxes for each of his principals, and requested a receipt evidencing such payment, in order, as claimed on behalf of the relator, that each of his principals might be qualified to cast a vote at the election of April 8, 1947, and that the Town Assessor and the Town Treasurer refused to assess or receive a capitation or poll tax from any of the individuals represented by Cleaves.

The record contains affirmative evidence on behalf of the relator and a denial by the respondents that prior to the election of April 8, 1946, the town council did accept the payment of capitation or poll taxes from non-property owners at any time up to the opening of the polls, even though the names of such non-property owners were not included in any assessment lists.

Notwithstanding that under Section 31 of the Town Charter it was provided that the Town Assessor annually assess every male citizen above the age of twenty-one years for a capitation or poll tax for the year 1946-1947, he did not do so. During the month of May, 1946, his attention was called to the fact that it was customary to give non-property owners an opportunity to register or to appear before the Assessor for the purpose of being assessed for a capitation or poll tax. He then took the position that the provision for the poll or capitation tax provided for in the Town Charter "was unconstitutional" and on this ground he declined to sit for the purpose of registering non-property

owners, as the Town Charter did not provide for registration days. Upon the Town Council being advised of the position taken by the Assessor, it by resolution adopted at a meeting held on June 3, 1946, designated June 12, 15, 19 and 22, 1946, as "registration days," and pursuant to the resolution a notice containing the following language,

"Register now to vote at the Town Election to be held April 8, 1947.

"All citizens not owning real estate in Newark are required to register to qualify to vote in the Municipal Elections,"

was inserted in the Newark Post, a newspaper of the Town of Newark, on June 6, 13 and 20, 1946, and fifty placards of such notice were posted in public places throughout the town. Public notice was also given to the citizens of the town by the posting of placards in twenty-five public places that the council would sit as a board of appeals for the purpose of hearing appeals from the assessment. The notice was in the following language:

"Assessment of Real Estate

"The town assessment of Real Estate for the year 1946, will be displayed at Rhodes Drug Store from June 17 to July 1, inclusive.

"The Council of Newark will sit at the Council office as a Board of Appeals on said Assessment on July 1, 1946, between the hours of 1:00 P.M., and 6:00 P.M. [E.D.S.T.]

"Council of Newark
"C. C. Hubert,
"President of Council."

It is to be noted that this notice makes no reference to capitation or poll taxes.

The Assessor was elected April 16, 1946. It was his duty to make return of his assessment within six weeks after his election, but it was not returned until June 17, 1946.

It appears from the assessment records for the year 1946-7, that one hundred and twenty-eight non-property owners, citizens of the town, were assessed at a capital of one hundred dollars each. It has not been shown whether any of these citizens voted at the 1947 election.

Counsel for the relator poses this question: "Under the provisions of the Town Charter of Newark, is it necessary for a non-property owner, otherwise fully qualified to vote, to be included in an assessment list completed ten months prior to an election in order to be permitted to pay a poll tax and become qualified as an elector?"

The Act of Incorporation of the Town, Chap. 175, Vol. 18, Sec. 29, provides that "At all town elections every male citizen and every freeholder (male or female) in said town, of the age of twenty-one years and upwards, having resided or been a freeholder within said town for three months next previous to the election, and having paid a town tax for the year immediately preceding, which payment shall be evidenced by a receipt, and none other shall be entitled to vote * * *."

It is argued by counsel for the relator that a proper construction of the provisions of the Town Charter does not require the name of an elector to be included in the assessment list prepared in a previous year, in order that such elector may pay a poll tax and be qualified to vote. Whether such a person should be permitted to pay a poll tax under such circumstances depends upon the authority of the Town Treasurer to receive it and to give a receipt evidencing its payment. This involves a consideration of the pertinent

provisions of the Town Charter. These provisions contemplate:

1st: An assessment of taxable persons and property. It is apparent that this should be a list made by the assessor of all taxable persons and property within the town, with the names of the owners of such property and the true value thereof as determined by the assessor, with such corrections of or additions to the list as shall be made by the council upon appeal; and also the fixing by council of the amount, not in excess of $100, of the capital assessment of persons for a capitation or poll tax.

2nd: A levy upon such persons and property to raise the amount required for the financial needs of the town, and the fixing of the rate of taxation upon the persons and property for this purpose.

3d: The issuance of a warrant to the officer charged with the collection of the amount of the tax by the levy, who in the instant case was the Town Treasurer.

Lastly, a collection by such officer pursuant to the authority of the warrant issued to him of the gross amount of tax which will arise by virtue of the levy.

In the present case the list containing the names of the taxables and the other details required by Section 32, signed by the president of council and delivered to the treasurer, constituted his warrant for the collection of all taxes which he was required to collect.

No supporting authority is necessary to enable us to say that the tender made by Cleaves, on behalf of the individuals represented by him, to the Town Assessor and Town Treasurer, even if accepted, would not have legally authorized the Assessor to add their names to the assessment list. The list was no longer in his possession.

It had been returned to the Council and the Assessor had lost all control over it. Furthermore, the valuation and assessment had been adjusted before the issuing of the warrant to the Treasurer, and, in the language of the Town Charter "The determination of the council * * * upon any matter relating to such assessment shall be final and conclusive."

The authority of the Treasurer to collect capitation or poll and other taxes depends solely on the Town Charter. Before he could legally proceed to collect any such taxes it was necessary for him to have received from the council the list signed by the president of the council, containing the names of the taxables and the other detailed facts as required by the Town Charter. This is what the law provided to authorize him to collect the taxes; he must have had it, and he would have been a trespasser if he had proceeded to compulsory action without it. Upon this point the decisions are numerous and uniform. *Cooley on Taxation, 4th Ed.,* § 1314, 61 *C.J.* 1018. The list that was delivered to him by the council was the measure of his power and his corresponding duty in the collection of taxes. Beyond this power he had neither the authority nor the duty to collect taxes. With what Cleaves, on behalf of his principals, desired him to do, he had no concern as Treasurer, and therefore he was not required, nor could he have been compelled, to exercise any official duty.

Whether there ever was a pre-existing practice of accepting the payment of a capitation or poll tax from non-property owners at any time up to the opening of the polls, notwithstanding that the name of the property-owner may not have been included in any assessment lists, is a question of fact as to which the parties are not in accord. It is not necessary for us to resolve this question of fact, as we do not consider it material in arriving at our con-

clusion. Under the provisions of the Town Charter one of the qualifications of an elector is the payment of a town tax. The Town Charter specifically provides that the persons possessing the prescribed qualifications, including the payment of a town tax, and none other, shall be entitled to vote. The steps necessary to be taken before the Town Treasurer had the power or the duty to accept or to compel the payment of a capitation or poll tax, and to issue a receipt therefor, are specifically prescribed by the Town Charter. The Town Treasurer had neither the right nor the power to waive, take from, or to add to any of these required steps. His powers and duties are circumscribed by the Town Charter. He had no authority to go outside of the Town Charter and act because of some pre-existing custom or practice which was not in accord with the provisions of the Town Charter.

The assessor plainly failed to perform his duty to assess citizens of the town for a poll tax. Likewise, the notices of the "registration days" and the notices concerning the assessment of real estate did not constitute a compliance with the charter requirements so far as notification of the time and place of hearing appeals with relation to the poll tax is concerned. However, the failure of the assessor and of the Council fully to perform their duty does not aid the relator's case. The charter prescribes periods during which assessments shall be made and notices of hearings of appeals shall be given. Any resident who felt aggrieved because of the neglect or default of the assessor to assess him for a poll tax could, within the respective periods, have applied to the assessor, appealed to the Council, or resorted to the courts. It does not appear from the facts that any of the one hundred and six persons now objecting took any such steps. Rather, they waited for months after the time for appeals to the Council, and

until a few days before the election in 1947. Their action was neither appropriate nor timely.

Relator contends that the election violates the constitutional provision which directs that "All elections shall be free and equal". *Constitution of Del. Art. I, Sec. 3.* This provision does not vouchsafe the right to vote in all events, nor dispense with a necessity for complying with qualifications of general application which are susceptible of being complied with by timely action. In this connection, the language of Chief Justice Comegys in *Frieszleben v. Shallcross,* 9 *Houst.* 1, 82, 83, 19 *A.* 576, 586, 8 *L.R.A.* 337, seems apposite: "If he desire to vote at elections, he has nothing to do but see to it that his name is kept upon the assessment list, and it will be retained there; and he will have the right to vote because of that, according to the constitution, [charter,] if he will keep up, like other people in like case, the payment of his tax. * * * And he who will not give himself the trouble to see that he is assessed sleeps upon his rights; and for him the maxim, non dormientibus sed vigilantibus, leges subveniunt, has appropriate application."

We conclude that no infirmity in the election has been shown which would justify the relief prayed for.

The rule should be discharged and the application to file the information denied.

December 17, 1947. Motion for re-argument denied.