[No. 3,023.]

# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* JOHN BOWEN.

THE PARDONING POWER.—The pardoning power, whether exercised under the Federal or State Constitution, is the same in its nature and effect as that exercised by the representatives of the English crown in this country in colonial times.

PARDON REMOVES DISABILITY TO TESTIFY.—One of the consequences of an executive pardon is to remove from the offender the disability which follows conviction of a felony.

PARDON AFTER PUNISHMENT.—An offender may be pardoned after he has suffered the punishment adjudged for his crime.

RESTORATION TO CITIZENSHIP NOT A PARDON.—An executive act restoring a convicted criminal to the rights of citizenship, is not a pardon—does not remove the legal infamy. So long as the judgment of guilt remains the disability to testify necessarily continues.

APPEAL from the County Court of Sutter County.

The defendant was convicted, and appealed from the judgment and from an order denying his motion for a new trial.

The other facts are stated in the opinion.

*J. G. Eastman* and *G. W. Tyler*, for Appellant.

*Attorney General Love*, for Respondent.

By the Court, WALLACE, C. J.:

On the trial of the prisoner upon an indictment for the alleged crime of grand larceny, one Davis was permitted to testify as a witness. Davis had been convicted of divers felonies in the Courts of the State, for which he had been adjudged to suffer and had suffered imprisonment in the Penitentiary. The record of these convictions was produced by the prisoner, who thereupon objected that Davis was thereby rendered incompetent to testify in the case. It appeared by the records produced and put in evidence by the prisoner in support of his objection, that in July, 1861, by the judgment of the Court of Sessions of the County of Santa Clara, Davis had been duly convicted of the crime of robbery and sentenced to suffer imprisonment in the Penitentiary; that in 1864 he had been duly convicted by the judgment of the County Court of the City and County of San Francisco of the crime of burglary, and again sentenced to imprisonment in the Penitentiary; and that in 1868, in the County Court of Santa Clara, he had been duly convicted of the crime of grand larceny, and by the judgment of that Court again sentenced to undergo punishment therefor by imprisonment in the Penitentiary.

It was conceded below and is conceded here that these convictions of themselves well supported the objection of the prisoner in that behalf. In order to remove the objection and to restore the competency of Davis, the people relied upon and exhibited to the Court an executive act which they claimed removed the disability arising from these several convictions, and which is as follows:

"Whereas, Charles Davis alias Charles Moore has been convicted of criminal offenses against the laws of the State of California, and whereas it is desirable for the attainment of the ends of justice that he should be restored to citizenship; now, therefore, I, H. H. Haight, Governor of said State, do hereby restore said Davis to all the rights of citizenship possessed by him before his conviction for the offenses above referred to. Witness my hand and the great seal of the State at Sacramento this 17th day of March, 1871.

"H. H. HAIGHT, Governor.

[Seal.] "Attest: H. L. NICHOLS, Secretary of State."

The Court below being of opinion that the competency of Davis as a witness was thereby restored, thereupon overruled the objection of the prisoner in that behalf, and its ruling in this respect is now brought up for review.

The power of the Executive of the State to pardon offenses, other than the offense of treason or impeachable offenses, is conferred upon him by the Constitution. (Art. 5, Sec. 13.) His power in that respect is of the same general nature as that conferred upon the President of the United States by the Federal Constitution. (Art. 2, Sec. 2.) It is true that the pardoning power of the President extends to the pardon of offenses before as well as after conviction, while that of the Governor, under the provisions of the State Constitution, embraces only those cases in which a conviction has already been had; and it is also true that, except in cases arising in the military or naval service, the pardoning power of the President is unrestrained by legislative control, while that of the Governor is subject, in its exercise, to such regulations as the Legislature may provide in relation to the manner of applying for pardons; but the inherent nature and operation of the power itself, whether exercised by the one or the other of these officers, and the consequences of its exercise

CAL. REPS. XLIII—56

by either in a given case, must be considered to be substantially identical, and as extending its effect not merely to the punishment otherwise inflicted or to be inflicted, but also to the guilt of the offender. "The effect of a pardon (under the rules of the common law) is to make the offender a new man; to acquit him of all corporal penalties and forfeitures annexed to that offense for which he obtains a pardon; it gives him a new credit and capacity; and the pardon of treason or felony, even after conviction or attainder, will enable a man to have an action of slander for calling him a traitor or felon." (2 Blackstone, p. 402.) Mr. Chief Justice MARSHALL, speaking of the pardoning power of the President under the provisions of the Federal Constitution, said: "As this power had been exercised from time immemorial by the Executive of that nation whose language is our language, and to whose judicial institutions ours bear a close resemblance, we adopt their principles respecting the operation and effect of a pardon," etc. (*United States* v. *Wilson,* 7 Peters, 159.)

In *Ex Parte Wells,* 18 How. 310, the Supreme Court of the United States reaffirmed this view of the nature of the executive power to pardon offenses as existing under the Federal Constitution, and there can be no doubt that the pardoning power, whether exercised under the Federal or State Constitution, is the same in its nature and effect as that exercised by the representatives of the English Crown in this country in colonial times, and that one of the consequences of a pardon extended was and is to remove from the offender that disability to testify as a witness in a Court of justice which, by the rule of the common law, was consequent upon his conviction of a felony. The Governor might have pardoned Davis had he seen fit—he was not the less the subject of the executive power in that respect because he had already suffered the punishment adjudged for his crime. (2 Wheeler C. C. 451.) Had he done so, there is no doubt

that his competency as a witness would have been thereby restored.

But the executive act under review is not a pardon, nor was it intended to be such. It did not purport to remove the guilt of Davis, nor wipe away the infamy by the law of the land attaching upon him by reason of his conviction. It sought to restore him to all the rights of citizenship possessed by him before his conviction of the offenses "above referred to," and to so restore him, while he yet remained a convicted felon, and with the consequent legal infamy attaching by law to that status. The stain of his iniquity, flowing from his conviction, is still left upon him by the Executive. The judgment of the law upon that fact is that the credit of his oath is so absolutely and effectually destroyed that he cannot be trusted to testify at all; that it is not to be hoped that he will speak the truth, but must be conclusively assumed that he will not. If the judgment be reversed, the disability is, of course, necessarily removed; if the offense be pardoned the same consequence, too, would follow. But so long as the judgment remains, the guilt it fixes upon the convict is not taken away, and the disability necessarily remains. They are legally inseparable; hence it is held that if the Executive pardon the offense, he necessarily removes the disability annexed to it by law, and a proviso inserted in the deed of pardon that the disability shall remain, notwithstanding the pardon of the offense itself, is void. (*People* v. *Pease*, 3 Johns. Cas. 333.)

These views dispose of the question presented, but if they did not, it might be not a little difficult to maintain that the attempted restoration of Davis "to all the rights of citizenship" he had theretofore possessed would, by expression, include a right to testify as a witness, or that there is any known relation between the competency of a witness and his "rights of citizenship."

Judgment reversed and cause remanded for a new trial.

Mr. Justice CROCKETT did not express an opinion.