No. 26,245.

In re Mary K. Eggleston, Petitioner for Writ of Habeas Corpus.

SYLLABUS BY THE COURT.

1. Pardon—*Sufficiency of Recital of Offense.* A pardon for the crime of mingling poison with food or drink with intent to kill a human being is not rendered void by the fact of its describing the offense as an attempt to commit murder, where it correctly recites the maximum penalty and the term of court at which the conviction was had, there being no suggestion of the person pardoned having been convicted on more than one charge.

2. Same—*Statutory Notice of Application—Inaccurate Description of Offense.* A statutory notice of an application for a pardon is not vitiated by inaccurately describing the offense as an attempt to commit murder instead of as mingling poison with drink with intent to kill a human being.

3. Same—*Inconsistent Recital.* Where a pardon is granted to one convicted of a felony, who has not been imprisoned and who is at large on an appeal bond, the fact that it recites its purpose to be to restore civil rights does not warrant a conclusion that the governor made the mistake of supposing the applicant to be in the penitentiary.

Original proceeding in habeas corpus. Opinion filed April 11, 1925. Petitioner discharged.

*L. S. Harvey, W. E. Stickel,* both of Kansas City, *Nellie Cline, George W. Finney,* and *Roscoe E. Peterson,* all of Larned, for the petitioner.

*Charles B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, *Blaine Roberts,* county attorney, *W. H. Vernon, Jr.,* and *J. S. Vernon,* both of Larned, for the respondent.

The opinion of the court was delivered by

Mason, J.: On November 24, 1924, Mary K. Eggleston was sentenced to the penitentiary upon a conviction for violating the statute providing for the punishment of "every person who shall mingle any poison with any food, drink, or medicine, with intent to kill or injure any human being." (R. S. 21-433.) She appealed and was released upon bond. On January 10, 1925, the governor granted her a pardon. The sheriff holds her in custody, contending that the pardon for various reasons is invalid. She asks to be discharged upon habeas corpus.

1. The principal contention urged to the validity of the pardon is that it does not sufficiently describe the offense. It recites that the petitioner "was convicted of the crime of attempted murder" and grants a pardon "of said offense." Accurately speaking, the

offense defined in the statute above quoted is not the same as that of attempting to commit murder. The former is punishable by imprisonment from five to twenty years; the latter by imprisonment for not more than ten years. (R. S. 21-101, first subdiv.) Apart from the matter of penalty, the distinction between them is quite similar to that between an assault with intent to commit rape and an attempt to commit it, which are recognized as different offenses. (*In re Stahlnaker,* 93 Kan. 622, 144 Pac. 832.) The question to be determined is whether notwithstanding the discrepancy referred to the pardon should be given effect.

Cases collected in a recent note (34 A. L. R. 212, 214) show a variation from a very strict to a quite liberal construction of the language of a pardon, with a modern tendency, as might be expected, toward liberality. It has been said that "pardons being in derogation of law, to be valid and of effect must accurately describe the offense intended to be forgiven." (*Ex parte Higgins,* 14 Mo. App. 601.) On the other hand, a pardon for "cow stealing" has been held effective to remove the disabilities of one convicted of the theft of a steer, evidence being produced that there had been but one conviction (*Hunnicutt v. The State,* 20 Tex. App. 632), and misrecitals of the date of conviction are not regarded as fatal (20 R. C. L. 548).

No reason is apparent why a defect of description in a pardon may not be rendered harmless by the aid of facts shown on its face which serve to identify the offense intended. Here the pardon recites that the conviction was had at the November term, 1924, of the Pawnee county district court. It is not suggested that the petitioner was convicted on more than one charge at that time and place. The exact crime of which she was accused is therefore capable of ascertainment beyond the possibility of mistake from the records to which the pardon itself directs attention. There is also a recital that the sentence was for a term of two to twenty years, and while the minimum may be erroneously stated, the maximum period shows that the governor cannot have been misled into thinking the charge less serious than it in fact was. Whether the petitioner was guilty and whether the conditions justified the exercise of clemency are of course matters foreign to the present inquiry. As was said in an opinion of the United States supreme court:

"Executive clemency exists to afford relief from undue harshness or evident mistake in the operation or enforcement of the criminal law. The administration of justice by the courts is not necessarily always wise or certainly considerate of circumstances which may properly mitigate guilt. To afford a

remedy, it has always been thought essential in popular governments, as well as in monarchies, to vest in some other authority than the courts power to ameliorate or avoid particular criminal judgments. It is a check entrusted to the executive for special cases. To exercise it to the extent of destroying the deterrent effect of judicial punishment would be to pervert it; but whoever is to make it useful must have full discretion to exercise it." (*In re Grossman,* 45 Sup. Ct. Rep. 332, 337.)

We conclude that the pardon is not rendered invalid by the defective description.

2. A description of the offense as an attempt to commit murder was likewise contained in the thirty days' notice of the application for a pardon published in the official county paper as required by the statute. (R. S. 62-2216.) Objection to the pardon is made on this account also. The possibility of anyone interested in the matter having been misled by the inaccuracy is so remote as to be negligible, and we regard the notice as sufficient to accomplish the purpose of the law and as constituting a substantial compliance with it.

3. The pardon bore the heading "Citizenship pardon," and concluded with the sentence: "This pardon is granted for the purpose of restoring him to all the rights of citizenship." The respondent urges that this language shows the governor must have supposed the petitioner had already been incarcerated in the penitentiary—for the suspension of her civil rights would begin only with such incarceration (*Harmon v. Bowers,* 78 Kan. 135, 96 Pac. 51)—and therefore must have acted under such a mistake of fact as to vitiate the pardon, inasmuch as she had not been imprisoned at all, but was at large upon an appeal bond. Obviously the form employed was one designed for use where a pardon is granted primarily to restore civil rights—including that to vote (Const., art. 5, § 1)—not earlier than ten days before the expiration of a sentence, a situation in which the statute makes the publication of a notice unnecessary. (R. S. 62-2222.) The pardon being otherwise sufficient in form, the recital of its being granted to restore citizenship does not invalidate it. Whatever theoretical plausibility there may be to the suggestion that the governor supposed the petitioner to be in the penitentiary, as a practical matter it is not at all persuasive.

The petitioner is discharged.

HARVEY, J., not sitting.