7 So.2d 889

**HOGAN v. HARTWELL.**

I Div. 166.

Supreme Court of Alabama.

May 7, 1942.

Jesse F. Hogan, of Mobile, pro se.

648

Harry T. Smith, & Caffey, of Mobile, for appellee.

GARDNER, Chief Justice.

Appellant, a qualified elector of the City of Mobile, instituted this contest of the election of Harry T. Hartwell to the office of Commissioner of said city for the term beginning October 1, 1941. The contest is based upon two grounds: First, it is insisted that Hartwell, at the time of the election, was ineligible to hold the office by reason of his conviction in the United States District Court for the Southern District of Alabama on May 11, 1939, of an

offense punishable by imprisonment in the penitentiary and in the second place the contention is that said Hartwell was ineligible because not a qualified elector, as he had failed to re-register following said conviction.

Upon the trial it developed, undisputedly, that contestee Hartwell in May, 1939, was duly convicted in the United States District Court for the Southern District of Alabama under an indictment which in the first two counts charged a violation of Section 1731(a), Title 12 U.S.C.A., in that false statements were made for the purpose of procuring a loan from a Federal agency, and in the third count with a use of the mails to defraud in violation of Section 338, Title 18 U.S.C.A.

There was a general verdict of "guilty as charged in the indictment", and punishment was imposed of a fine of $250 and imprisonment in the penitentiary for one year and a day. The fine was duly paid and the sentence suspended. At the time of the election for City Commissioner of Mobile in September, 1941, therefore, the fine had been paid and the period covered by the sentence of imprisonment had expired.

■ Standing alone the foregoing admitted facts establish a prima facie case in favor of the contestant and point to the ineligibility of the contestee to hold the office. Section 60, Alabama Constitution 1901; State ex rel. v. Blake, 225 Ala. 124, 142 So. 418; Title 17, § 16, Code 1940; Title 41, § 5, Code 1940; Finklea v. Farish, 160 Ala. 230, 49 So. 366.

But these facts do not stand alone. Contestee offered as a complete answer the order of the State Board of Pardons and Paroles restoring to said Hartwell "all Alabama Civil and Political Rights" of which he was "by law deprived upon his conviction in said Federal Court". Before becoming a candidate, Hartwell made application to the State Board and received and accepted the above order restoring his civil and political rights.

It appears also without dispute no other proceedings had ever been brought against Hartwell in the Federal Court. There was but one indictment containing three counts and contestant makes the point that the order of the State Board makes reference only to a violation of Section 1731(a), Title 12, United States Code Annotated, omitting reference to the third and last count charging a use of the mails to defraud in viola-

tion of Section 338, Title 18, United States Code Annotated. But the verdict of the jury was general in character and without reference to any particular count in the indictment. Undisputedly this was the only judgment of conviction ever entered against the contestee. The preliminary statements contained in the order indicate the conviction to which reference is made, and the intent and purpose of the order are clear beyond dispute.

■■ A pardon is to be construed as a whole to carry out the general intent and is to be liberally construed in favor of the person pardoned. 46 C.J. 1192. The following illustrative cases are here much in point: Ex parte Eggleston, 118 Kan. 381, 234 P. 970; Ex parte Stanley, 120 Kan. 1, 241 P. 685, and Redd v. State, 65 Ark. 475, 47 S.W. 119. Contestant's contention would too narrowly interpret the order and is not here accepted as well founded.

But coming to matters of substance, contestant insists the order is without force and that only the President of the United States could issue any effective order of that character, citing Section 2, Art. II, United States Constitution, and Harrison v. Snook, D.C., 22 F.2d 169. But there is here involved no matter of remission of fine or release from imprisonment. The fine has long since been paid and the time of sentence long since expired. The only matter, therefore, in which Hartwell was interested bears relation to the restoration of his civil rights. This was originally a function of the Governor under Section 124, Constitution 1901. This duty (death sentences excepted) now devolves upon the State Board of Pardons and Paroles as authorized under Amendment 38, Constitution 1901, as found on page 332, Title 1, Code 1940, and as set forth in Title 42, § 16, Code 1940. In this latter section it is provided that "no pardon shall relieve from civil and political disabilities unless specifically expressed in the pardon".

True only the President could grant a pardon for remission of the fine and release from imprisonment. But no official of the Federal government would have interest in the matter of restoration of civil rights tending to the qualifications of the convicted person for an office under State authority.

■ Speaking of the provision of our Federal Constitution, and with particular reference to Section 2, Article 4, the au-

thorities are generally agreed that the privileges and immunities which are protected by Constitutional inhibition concern the person and private rights of the citizen, and do not include' the right to hold office. 6 R.C.L. 289; 12 Amer.Jur. p. 123; Shaw v. City Council, 131 Iowa 128, 104 N.W. 1121, 10 L.R.A., N.S., 825, 9 Ann. Cas. 1039. And this general principle was recognized by this Court in Davis v. Teague, 220 Ala. 309, 125 So. 51, where sustaining authorities are noted.

The Shaw case [131 Iowa 128, 104 N.W. 1124], cited above, contains an interesting discussion of this question wherein it is stated that the "state has the same freedom of employment that belongs to the individual", and that "the right to hold a public office or to be employed by the state in any capacity is not a privilege within the meaning of the Constitution".

It was there further observed: "The right to pursue any lawful calling in a lawful way is undoubtedly a fundamental right; but there is a marked distinction between this right and the so-called right to be employed by a particular person or in a particular line of service. For the purpose of government, the counties, cities, and towns of the state are its agents and under its control; and what the state may constitutionally do with reference to public matters it may direct its agents to do, and by the act in question the state has simply said that it will employ in all public departments and upon all public works only those of a certain class of its citizens, other things being equal."

The State, therefore, alone is interested in the matter of qualifications of one holding the office of Commissioner of the City of Mobile and neither the President nor any other official of the Federal Government is concerned therewith.

■ Contestant would argue there was no pardon and that restoration of contestee's civil rights was without foundation upon which to rest. But we think this argument overlooks the broad and comprehensive meaning of the word "pardon" as found in the authorities to the effect that it is a declaration on record by "the chief magistrate of a state or country that a person named is relieved from the legal consequences of a specific crime". 20 R. C.L. 521. And in referring to this character of pardon the authorities hold that when the pardon is granted after the term of imprisonment has expired "it removes

all that is left of the consequences of conviction—his disabilities". 20 R.C.L. 557, 558.

The argument that the President only can act in cases of this character is to leave the citizen of the State entirely dependent upon the will of an officer of the Federal Government concerning a matter in which the Federal Government is without interest or concern. By analogy the case of State v. Riddle, 213 Ala. 430, 105 So. 259, is authority for the conclusion that in instances of this character the State Board of Pardons and Paroles has authority to act whether the conviction be in a State or Federal Court. And the provisions in Title 17, § 16, Code 1940, conferring power on the State Board to restore "citizenship with the right to vote" of one who is disqualified from voting by reason of conviction, whether the conviction was had in a State or Federal Court, likewise points to the same end.

The very question here presented was considered by the Kentucky Court in the very recent case of Arnett et al. v. Stumbo et al., 287 Ky. 433, 153 S.W.2d 889, 135 A.L.R. 1488. So far as here applicable the gist of that decision is to be found in headnotes 3 and 4 as follows:

"3. The right to vote and to hold office in a state comes from the state and is subject to regulation and control of state.

"4. Under provisions of constitution authorizing governor to restore suffrage and office holding rights by executive pardon to one convicted of a felony, governor had authority to restore citizenship rights of one convicted in federal court of violating a federal statute for which a felony punishment was provided, as against contention that a pardon by the President of the United States was essential to restore lost rights".

See also 39 Amer.Jur. 532.

We have not overlooked contestant's argument concerning differences in constitutional provisions of Kentucky as compared with those of our State. But we cannot agree these differences are here so material as to in any manner affect the soundness of the reasoning and conclusion of the Kentucky Court in the Stumbo case and its applicability here. A careful reading of that opinion is quite persuasive to our minds. We have likewise examined People v. Bowen, 43 Cal. 439, 13 Am.Rep. 148, and Donham v. Gross, 210 Cal. 190, 290 P. 884, from the Supreme Court of Cali-

fornia. These decisions give construction to the statutory authority of the pardoning power of that state differing in some respects from our own. But viewed in any aspect they are not persuasive that the conclusion here reached is unsound.

We are, therefore, of the opinion the State Board had the authority to issue the order restoring citizenship rights to the contestee and that the argument to the contrary is without merit.

The contention that the provisions of Section 60, Constitution 1901, forever forbids one convicted of a felony from holding office in this State, with citation of State ex rel. v. Blake, supra, in support thereof, is likewise untenable. It overlooks entirely other constitutional and statutory provisions with reference to pardons and the full effect of such action by those entrusted with that duty. "The doctrine has generally been accepted by the courts that a full and unconditional pardon restores to the offender the customary civil rights which ordinarily belong to a citizen" (39 Amer.Jur. 554), and this includes restoration to the "pardoned offender his eligibility for state elective office which was forfeited by his conviction". 39 Amer.Jur. 556. For a full discussion of this principle, reference is made to State ex rel. Cloud v. State Election Board, 169 Okl. 363, 36 P.2d 20, 94 A.L.R. 1007 and Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366.

But in this State we have express statutory provisions that such a pardon will not have such effect unless "specifically expressed in the pardon". Title 42, § 16, Code 1940. Having this in mind, the State Board of Pardons and Paroles issued the order in the instant case for the express purpose of removing from the contestee the civil and political disabilities of which he had been deprived by his conviction.

There is objection to the fact the pardon order here in evidence is in form of a certificate and ineffective for that reason. But as previously observed pardon orders are to be liberally construed in favor of the person pardoned (46 C.J. 1192; Horton v. Gillespie, 170 Ark. 107, 279 S.W. 1020) and no particular language or form is necessary. Hoffman v. Coster, 2 Whart., Pa., 453.

The State Board of Pardons and Paroles is authorized to adopt and promulgate rules and regulations touching upon practice and procedure in matters pertinent to pardons (Title 42, § 17, Code 1940), and there can be no valid objection to the particular method here employed to express the Board's action upon the application presented to it.

Contestant insists Hartwell was under the necessity of re-registering as a voter after his conviction and notwithstanding the pardon issued. Section 182, Constitution 1901; Title 17, § 15, Code 1940; Finklea v. Farish, supra. And much reliance is had upon Shepherd v. Sartain, 185 Ala. 439, 64 So. 57.

Contestee was duly registered as a qualified voter. Upon the issuance of the pardon, his citizenship and right to vote was restored. Title 17, § 16, Code 1940. And this statute does not in express terms require re-registration. In Title 17, § 36,. Code 1940, is the provision that a registered voter shall not again be required to register "unless he or she change the county of his. or her residence". And this was the statutory provision treated in Shepherd v. Sartain, supra. That authority, therefore, is not here applicable.

Contestant takes the position that the conviction of contestee automatically removed his name from the registration list. But we read Title 17, § 46, Code 1940, to the contrary, as it is there expressly provided that notice be given the elector of the proposed action of the Board of Registrars with an opportunity to be heard. This notice was given contestee and upon his appearance and presentation of the pardon the Board declined to strike his name from the list. This we think was the proper course to pursue. Attorney General Reports 1930–32, p. 743.

Under the circumstances here disclosed re-registration would have been a useless ceremony and one not contemplated by the Statute.

Upon due consideration of the various grounds of contest we are persuaded they are without merit and that the ruling of the court below in favor of contestee is correct and should be here affirmed.

It is so ordered.

Affirmed.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.