HAMLIN, Justice.
 

 Because of its importance involving a matter growing out of an election, this case was not scheduled for hearing on the regular docket of this Court; it was heard out of term and received our immediate attention.
 

 The results of the first Democratic Primary Election, held on December 5, 1959, for State Senator from the Thirty-Second Senatorial District of Louisiana, composed ■of the Parishes of Concordia, East Carroll, Madison, and Tensas, were:
 

 Howard M. Jones--------3,676 Votes
 

 Brenham C. Crothers-----3,231 Votes
 

 W. E. Person------------2,603 Votes
 

 Candidates in a second primary election held on January 9, 1960 for the above office were Howard M. Jones and Brenham C. Crothers — W. E. Person having been ■eliminated in the first primary. The results of that election were:
 

 Howard M. Jones--------5,177 Votes
 

 Brenham C. Crothers-----4,683 Votes
 

 After tabulation the results of the January 9, 1960 election were certified to the Secretary of State by the Thirty-Second Senatorial Executive Committee on Friday, January 15, 1960, and Howard M. Jones was declared the Democratic Nominee for State Senator.
 

 On the same day, January 15, 1960, Brenham C. Crothers, defeated candidate, supra, filed the present action,
 
 [1]
 
 wherein he prayed:
 

 1. That the votes cast for Howard M. Jones in the first and in the second primary election be declared illegal, null, and not counted.
 

 2. That Howard M. Jones be declared ineligible for candidacy in either the first or second primary elections, and that his participation in the primaries be declared a nullity and of no effect.
 

 3. That plaintiff, Brenham C. Crothers, be declared the Democratic nominee for the office of State Senator from the Thirty-Second Senatorial District for the four-year term beginning 1960 and ending in 1964.
 

 4. Alternatively, that the second primary election declaring Howard M. Jones to be the Democratic nominee for the office of State Senator be declared a nullity.
 

 
 *805
 
 5. Further alternatively, that the first primary election declaring Howard M. Jones to be eligible to contest with plaintiff in a second primary and the second primary election declaring Howard M. Jones the nominee be each and both declared nullities.
 

 Ground set forth by plaintiff for the relief sought were that Howard M. Jones, defendant, was convicted by the Federal District Court for the Western District of Arkansas, during May, 1925, on five counts of violating Section 215 of the Penal Code of the United States concerning Use of the United States Mails to Defraud, and was sentenced on each count to serve one year and one day in the United States Penitentiary at Leavenworth, Kansas, said sentences to run concurrently; that Jones served his sentence; that the crime of which Jones was convicted was a felony, and that such conviction deprived Jones of his rights to register to vote, to vote, and to hold the office of State Senator in Louisiana; that such conviction deprived Jones of his citizenship of the State of Louisiana and of the United States; that Jones’s citizenship had not been restored on February 11, 1957. when he registered to vote in the Parish of Tensas; and, that when Jones qualified with the Thirty-Second Senatorial District Executive Committee as a candidate for State Senator, he fraudulently represented himself to have been a Louisiana citizen for a period of five years and to be a duly qualified elector and voter of Tensas Parish.
 

 Reiterating the prayer of his original petition, plaintiff alleged in a supplemental petition that the Governor of the State of Louisiana had granted defendant a pardon on July 20, 1959 and had attempted to restore to defendant his citizenship. Plaintiff further alleged that even if defendant’s pardon had the effect of restoring his citizenship, defendant had not complied with the requirements of Article III, Section 9, of the Louisiana Constitution of 1921, LSA, providing that a member of the State Legislature must have been a citizen of the State for five years.
 

 In answer Jones admitted that he had entered a plea of guilty to the crime which plaintiff alleged he, Jones, had committed, and that he served approximately four months of his sentence, being released on parole. He stated that at no time had he made any secret of his past;
 
 [2]
 
 that in 1936,
 
 *807
 
 he established residence in Tensas Parish; and that in 1937, he registered to vote in Tensas Parish and had voted in that parish thereafter. He averred that he had not misrepresented his qualifications to anyone, and that he would establish his qualifications in every respect to represent the people as Senator of the Thirty-Second Senatorial District in the Louisiana Legislature.
 

 After hearing the matter on the merits— all exceptions filed by defendant to plaintiff’s original and supplemental and amending petitions having been referred to the merits — the trial judge rendered judgment in favor of the defendant, rejecting the plaintiff’s demands and dismissing his suit.
 

 The trial court held that LSA-R.S. 15 :- 572.1, Act 129 of 1940, which prescribes that, “No person who has been convicted of any crime, either in any of the courts of Louisiana or in any of the courts of the United States, which may be punishable by imprisonment in the penitentiary and who has not been afterward pardoned with express restoration of franchise shall be permitted to register, vote, or hold office or appointment of honor, trust, or profit in the state of Louisiana,” could not have a retroactive effect.
 

 Relying on opinions of the Louisiana Attorney General, the trial court held that conviction of a Federal offense and confinement in a Federal penitentiary during the years prior to 1940 did not deprive Jones of his Louisiana citizenship. Article VIII, Section 6, Louisiana Constitution of 1921; Opinions of the Attorney General, March 6, 1940, Opinions 1938-40, p. 779; Opinions of the Attorney General, November 23, 1938, Opinions 1938-40, p. 766.
 

 Plaintiff appealed to this Court from the above judgment. In brief, he sets forth the following specification of errors:
 

 “1. The district judge erred in holding that Article 8, Section 6 of the Louisiana Constitution of 1921, and
 
 *809
 
 R.S. 18:42(1) and R.S. 15:572.1 did not disfranchise Howard Jones prior to receipt of a valid pardon.
 

 “2.
 
 The district judge erred in holding that R.S. 15 :572.1 is or may be unconstitutional as prohibited
 
 ex post facto
 
 law.
 

 “3. The district judge erred in holding that Howard M. Jones committed no fraud when he registered in February of 1957.
 

 “4. The district judge erred in holding that Howard Jones had established his right to citizenship since approximately 1937, while said appellee was an admitted convicted felon.
 

 “5. The district judge erred in holding that registration following the pardon was ‘pointless’ — a requirement provided for by Louisiana Law.
 

 “6. The district judge erred in holding that the Acting Governor of Louisiana had the power to grant unto Howard Jones a valid pardon for a Federal crime.
 

 “7. The district judge erred in holding that Howard M. Jones was qualified to hold the office of State Senator from the 32nd Senatorial District, and in denying plaintiff the right to have the elections and the certification of Howard M. Jones as the democratic nominee declared null.”
 

 The specification of errors charges in effect that Howard M. Jones did not possess the required legal qualifications for the office of State Senator from the Thirty-Second Senatorial District when he offered himself as a candidate for that office to the Thirty-Second Senatorial District Executive Committee on or about September 18, 1959.
 

 The evidence of record discloses that the defendant established his residence in Tensas Parish during the summer of 1936, and registered to vote in that parish in 1937 or 1938. His testimony is as follows:
 

 “Q. Now, Mr. Jones, did you remain or did you continue to register and vote in Louisiana from that time forward ?
 

 “A. I have registered and voted in every election in Tensas Parish and the State of Louisiana since my initial registration and I have never been challenged by any person whatsoever. Or has the question ever been asked of me, ‘are you qualified or do you know that you might not be qualified?’
 

 “Q. Mr. Jones, did you * * * on that occasion, on the initial occasion, when you registered, or at any other time, when you registered, before a Registrar of Voters, in Tensas Parish, Louisiana, did you ever state or represent to them, that you had not
 
 *811
 
 served this sentence in Leavenworth, Kansas ?
 

 “A.
 
 I certainly did not, sir.”
 

 In 1937, Article VIII, Section 6, of the Louisiana Constitution of 1921, provided:
 

 “The following persons shall not be permitted to register, vote, or hold office or appointment of honor, trust, or profit in this State, to-wit: Those who have been convicted of any crime which may be punishable by imprisonment in the penitentiary, and not afterwards pardoned with express restoration of franchise; * * * ”
 

 and Section 1 thereof stated:
 

 “After January 1, 1922, the right to vote in Louisiana shall not exist except under the provisions of this Constitution.
 

 “Citizenship and age.
 
 Every citizen of this State of the United States, native born or naturalized, not less than twenty-one years of age, and possessing the following qualifications, shall be an elector, and shall be entitled to vote at any election in the State by the people:
 

 “(a) He shall have been an actual bona fide resident of the State for two years, of the parish one year,
 

 “(c) Character and literacy. He shall be of good character and shall understand the duties and obligations of citizenship under a republican form of government. * * *
 

 “Until and unless otherwise provided by law, the application for registration above provided for, shall be a copy on the following form, with the proper names, dates and numbers substituted for the blanks appearing therein, to-wit:
 

 “I am a citizen of the State of Louisiana. My name is....... I was born in the State (or country) of .............. Parish (or county) of ......... on the .... day of ......, in the year .... I am now .... years, .... months and .... days of age. I have resided in this State since.........in this parish since.........and in precinct No.......in Ward No....... since.....and I am not disfranchised by any provision of the Constitution of this State.
 

 “Said applicant shall also be able to fead any clause in this Constitution, or the Constitution of the United States, and give a reasonable interpretation thereof.”
 

 When Howard M. Jones registered to vote in Louisiana in 1937, he satisfied the residence requirements. He had been convicted in 1925 in the United States District Court, Western District of Arkansas, Texarkana Division, for violation of Section 215 of the Penal Code, 18 U.S.C.A. § 1341,
 
 *813
 
 relative to an illegal use of the mails, and had served his sentence in the Federal Penitentiary at Leavenworth, Kansas. He had an established residence in the State of Louisiana and in the Parish of Tensas.
 

 Questions posed, therefore, are (1) whether the previous conviction of defendant for a Federal offense had the effect of disfranchising him in Louisiana, and (2) whether his 1937 registration was fraudulent.
 

 “ * * * A person who is a citizen of the United States is necessarily a citizen of the particular state in which he resides. But a person may be a citizen of a particular state and not a citizen of the United States. To hold otherwise would be to deny to the state the highest exercise of its sovereignty, —the right to declare who are its citizens. The sovereignty of the citizens of a republic has its highest assertion in representative government, and is constituted in its political order in the representation of persons, and not of classes of interests. In the realization of this sovereignty of the people, its expression is obtained through some law regulative of political action by which the will of the people can be obtained. This is done through the instrumentality of qualified electors who, in the exercise of a free will, assert in con'formity to that law the determination of the civil and political organization in which is manifested the will of the people. Electoral right is a political right; and, although the right to vote is primarily the right of every citizen, yet it may be denied to a certain class of individuals. Therefore a person may be a citizen of the state, and may not be invested with electoral power. It is, however, difficult to conceive how a person can be an elector and not a citizen of the community in which he exercises the right to vote. The state, in the exercise of its sovereignty, can confer the right to vote, can make an alien an elector; and electoral power, when thus bestowed and exercised, becomes one of the most important duties, and the highest and proudest privileges of citizenship. The elector is therefore one of the sovereign people, a member of the civil state, and entitled to all its privileges.
 

 “The constitution of the state makes no distinction between ‘citizen’ and ‘elector.’ The words are used to signify the same thing.” State ex rel. Leche, v. Fowler, 41 La.Ann. 380, 6 So. 602.
 
 [3]
 
 Cf. State and DiCarlo v. Abbott, 41 La.Ann. 1096, 6 So. 805.
 

 
 *815
 
 “Certainly, if the courts can consider any question settled, this is one. For nearly ninety years the people have acted upon the idea that the Constitution, when it conferred citizenship, did not necessarily confer the right of suffrage. If uniform practice, long continued, can settle the construction of so important an instrument as the Constitution of the United States confessedly is, most certainly it has been done here. Our province is to decide what the law is, not to declare what it should be.” Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627.
 
 [4]
 

 “There are various types of relationship which a person may sustain towards the politically organized society to which he belongs. The two most fundamental for the purpose of defining his political rights are those of citizenship and non-citizenship. It has been said to be ‘the inherent right of every independent nation to determine for itself, and according to its own constitution and laws, what classes of persons shall be entitled to its citizenship.’ * * * It is sufficient for present purposes to merely state that our constitutional system recognizes both a federal and a state citizenship, and that each of them involves distinct complexes of rights and privileges 4= *
 
 *
 

 “The federal Constitution does not confer the right to vote upon any person, not even upon those who are citizens of the United States or of a state. * * * The United States has no voters in the states of its own creation except insofar as the Constitution has expressly provided that the members of the House of Representatives and of the Senate shall be elected in each state by electors having the qualifications requisite for electors for the most numerous branch of the state legislature. This right to vote is a federal right the exercise of which Congress may protect by suitable legislation. The action of the state is, however, requisite in order to define the class possessing it, and it is in that sense only that it is correct to say the right to vote is a matter for each state to determine for itself. The right to
 
 *817
 
 vote for state or local officers, or on purely state matters, is neither conferred by any provision of the federal constitution nor has any branch of the federal government the power to confer it. It is a matter that each state may determine for itself subject to certain limitations contained in the federal constitution.” Rottschaefer, Henry, Handbook of American Constitutional Law, Political Rights, p. 750. See, also, Cooley’s Constitutional Limitations, Vol. II, p. 1358. Cf. Slaughter-House Cases, 16 Wall. 36, 21 L.Ed. 394, 395.
 

 Our research has revealed no authority which would have made it incumbent upon Jones to secure a pardon from the President of the United States before registering in Louisiana. He had served his sentence and had paid the fine assessed against him.
 

 “True only the President could grant a pardon for remission of the fine and .release from imprisonment. But no official of the Federal government would have interest in the matter of restoration of civil rights tending to the qualifications of the convicted person for an office under State authority.” Hogan v. Hartwell, 242 Ala. 646, 7 So.2d 889, 891.
 

 In this connection Congress has not specified criminal convictions, except for desertion and treason, as grounds for loss of citizenship.
 
 [5]
 
 Roberts v. United States District Court for Northern District of California, 1950, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326.
 

 Even in cases involving conviction for desertion, the United States Supreme Court has held that citizenship is not forfeited in the absence of any giving of allegiance to a foreign power. In so holding, the Chief Justice, as organ of the Court, has stated:
 

 “It is my conviction that citizenship is not subject to the general powers of the National Government and therefore cannot be divested in the exercise of those powers. The right may be voluntarily relinquished or abandoned either by express language or by language and conduct that show a renunciation
 
 *819
 
 of citizenship. * * *
 
 Citizenship is not a license that expires upon misbehavior."
 
 (Emphasis ours.) Trop v. Dulles, 1958, 356 U.S. 86, 78 S.Ct. 590, at page 593, 2 L.Ed.2d 630.
 

 The right of franchise, on the other hand, is entirely a matter of State law, subject only to certain restrictions on the exercise of that power by the Federal Constitution. Accordingly, the right of franchise may be lost or forfeited for other causes under State law.
 
 [6]
 

 As hereinbefore set forth, appellee registered in 1937. At that time there had been no interpretation of Article VIII, Section 6, of the Louisiana Constitution of 1921, requiring a pardon with express restoration of franchise for registration purposes by a person who had been convicted of any crime which might be punishable by imprisonment in the penitentiary.
 

 In November, 1938, and March, 1940, the term “the penitentiary” was interpreted by the Attorney General of the State of Louisiana to mean “the Louisiana State Penitentiary.”
 

 We agree with the interpretation rendered and quote hereunder the opinion of the Attorney General of March 6, 1940, Opinions of Attorney General, 1938-40, p. 779:
 

 “When Section 6 of Article VIII of the Constitution speaks of conviction of crime as a disqualification, it speaks of crimes which may be punishable in
 
 the penitentiary.
 
 This means one certain penitentiary, and can only refer to the Louisiana State Penitentiary. If it had been intended to include Federal penitentiaries and those of other States, the Article would not have used the term
 
 the penitentiary,
 
 but would have used the term
 
 a penitentiary
 
 or
 
 any penitentiary.
 
 This is further shown by the fact that in making confinement in prison a disqualification, the same Section of the Constitution uses the term any
 
 public prison,
 
 the reason being, no doubt, that confinement in prison, regardless of what prison, would make it practically physically impossible for a person to vote or hold office.
 

 “The lawmakers’ reason for restricting the disqualification to conviction of crime punishable by imprisonment in the Louisiana State Penitentiary is to restrict it to disqualification on account of the commission of acts which involve moral turpitude of sufficient gravity, under the policy of our law, to make it wrong for those convicted
 
 *821
 
 thereof to hold office or vote. The fact that our Legislature prescribes such punishment for crimes punishable by confinement in the penitentiary shows that, under the public policy of our ^itate, such crimes involve great moral turpitude.
 

 “If we were to extend the disqualification to crimes punishable by confinement in a Federal penitentiary or in the penitentiary of other States, we would adopt the policy of the Congress of the United States and that of other States with regard to great moral turpitude. Our policy on the subject does not always agree with that of other jurisdictions. * * * If we were to adopt the view that conviction of crime carrying confinement in any penitentiary was a disqualification to vote or hold office in Louisiana, we might find ourselves in the anomalous situation of refusing to permit a person who had been convicted in that state * * * from voting or holding office in this State when the act for which he was •convicted, under the policy of our State, should have been performed.” (Original emphasis.) See, also, Opinions of the Attorney General, Nov. 23, 1938, Opinions 1938-40, p. 766; and In re Donegan, 282 N.Y. 285, 26 N.E.2d 260. Cf. Louisiana State Bar Ass’n v. Connolly, 201 La. 342, 9 So.2d 582.
 

 We conclude that when the defendant registered in Tensas Parish in 1937, he was a citizen of the State of Louisiana and made no fraudulent statement to this effect. By virtue of his registration he was rightfully and legally accorded the privilege of suffrage. Cf. 149 A.L.R. 1075; 135 A.L.R. 1493; Louisiana State Bar Ass’n v. Connolly, 206 La. 883, 20 So.2d 168.
 

 In 1940, Act 129, LSA-R.S. 15 :572.1, was enacted by the Legislature of Louisiana. It recites :
 

 “No person who has been convicted of any crime, either in any of the courts of Louisiana or in any of the courts of the United States, which may be punishable by imprisonment in the penitentiary and who has not been afterward pardoned with express restoration of franchise shall be permitted to register, vote, or hold office or appointment of honor, trust, or profit in the state of Louisiana.
 

 “Whoever registers, votes, or remains in office illegally after having been convicted of a crime punishable by imprisonment in the penitentiary shall be fined not less than fifty dollars nor more than one hundred dollars or imprisoned for not less than thirty days nor more than six months, or both.” See, also, LSA-R.S. 18:42.
 

 The title of Act 129 of 1940, supra, reads as follows:
 

 
 *823
 
 "To prohibit any person who shall have been convicted of any crime either in any of the Courts of Louisiana or in any of the Courts of the United States which may be punishable by imprisonment in the penitentiary, and not afterward pardoned with express restoration of franchise, from registering, voting, or holding office or appointment of honor, trust or profit in the State of Louisiana; to carry into effect the provisions of the Constitution of the said State, Section 6 of Article VIII and to provide a method whereby such Constitutional provisions and the provisions of this Act may be enforced, and to make it a crime to violate the provisions of this Act, and to provide penalties therefor.”
 

 We do not believe that it was within the province of the Legislature to interpret Section 6 of Article VIII, supra, by adding thereto the words “either in any of the Courts o.f Louisiana or in any of the Courts of the United States” following the phrase “convicted of any crime.”
 
 [7]
 

 The trial judge found that to apply Act 129 of 1940 to the defendant would be a violation of the United States Constitution, Article 1, Section 10, prohibiting ex-post facto laws. Because of our conclusion that the Legislature could not interpret Article VIII, Section 6, supra, it is not necessary for us to pass upon the correctness of his ruling.
 

 The defendant registered in Tensas Parish on February 11, 1957. He stated in his registration form that he was then registered in Tensas Parish. We agree with the trial judge that Jones’s registration in 1957 was not a new registration per se but a renewal of a previous registration.
 

 Apparently out of an abundance of caution, defendant applied to the Pardon Board of the State of Louisiana for a pardon of an offense which he had committed in the State of Arkansas. On July 17, 1959, the Pardon Board recommended to the Governor of the State of Louisiana that the applicant be granted a full pardon with complete restoration of citizenship. In accordance with the recommendation, a full pardon with restoration of citizenship was granted to Howard M. Jones on July 20, 1959 by the Liedtenant Governor and Acting Governor of the State of Louisiana.
 

 Appellant urges that this pardon is of no effect. Article V, Section 10, Louisiana Constitution of 1921.
 

 
 *825
 
 Because of our findings, supra, we conclude that this pardon was not necessary for the establishment of Jones’s right of franchise in Louisiana.
 

 On August 5, 1959, Orval E. Fauhus, Governor of the State of Arkansas, upon the recommendation of the Honorable Board of Pardons of the State of Arkansas, granted Howard M. Jones a full pardon with restoration of citizenship. This pardon would relate only to Jones’s rights in Arkansas, if any existed or would ever exist, and is not herein attacked.
 

 On December 23, 1959, Howard M. Jones received a full and unconditional pardon from the President of the United States.
 

 Howard M. Jones having acquired the right to vote in the State of Louisiana by virtue of his registration in 1937, the three pardons were not necessary to ratify his right to vote. Cf. Henry Rottschaeffer, Handbook of American Constitutional Law, Pardon Power of the President, p. 404; Cowan v. Prowse, 93 Ky. 156, 19 S.W. 407; Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527, 39 Am.Jur., Pardon, Reprieve and Amnesty, Sec. 57 et seq., p. 554; Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476; State v. Lee, 171 La. 744, 132 So. 219; State v. Gowland, 174 La. 351, 140 So. 500; 189 La. 80, 179 So. 41; State v. Taylor, 172 La. 20,133 So. 349; Hayashi v. Lorenz, 42 Cal.2d 848, 271 P.2d 18; Mason v. State, Court of Appeals of Alabama, 103 So.2d 337; Presbury v. Hull, 34 Mo. 29; Platner v. Sherwood, 6 Johns. Ch. 118; Hogan v. Hartwell, 242 Ala. 646, 7 So.2d 889; 18 C.J.S. Convicts §§ 3 and 4, pp. 102, 103.
 

 Article III, Section 9, of the Louisiana Constitution of 1921, provides:
 

 “Every elector under this Constitution shall be eligible to a seat in the House of Representatives, and every elector who has reached the age of twenty-five years shall be eligible to a seat in the Senate; provided, that no person shall be eligible to the Legislature unless at the time of his election he has been a citizen of the State for five years, and an actual resident of the district or parish or ward of the parish of Orleans from which he may be elected for two years immediately preceding his election * * * ”
 

 Article VIII, Section 13, further recites:
 

 “No person shall be eligible to any office, State, district, parochial, municipal or ward, who is not a citizen of this State and a duly qualified elector of the State, district, parish, municipality or ward, wherein the functions of said office are to be performed. * * * »
 

 Our conclusions and findings, supra, firmly establish that on September 18, 1959, when he qualified as a candidate for State
 
 *827
 
 Senator with the Thirty-Second Senatorial District Executive Committee, Howard M. Jones was and had been a citizen of the State of Louisiana for five years and was a •duly qualified elector of the State of Louisiana, the Thirty-Second Senatorial District, and the Parish of Tensas.
 

 For the reasons assigned, the judgment of the trial court is affirmed; all costs to be paid by appellant.
 

 HAMITER, J., concurs in the decree.
 

 [1]
 

 . W. E. Person filed a similar suit, -which was consolidated for trial with the instant matter. No appeal has been lodged in this Court by Person.
 

 [2]
 

 . In Article 14(A) (B) (C) of his answer, defendant averred:
 

 “That he is a native born citizen of the United States, having been born in Champagne, Illinois on June 11, 1900; that in 1901 he was removed to Welsh, Louisiana, where he resided until the age of five (5); that in 1905 he was removed to Lake Charles, Louisiana, where he attended public school; that after completion of the eighth grade he was compelled by economic circumstances to assume the responsibilities of adulthood and commenced work in a wholesale warehouse; that at the age of eighteen (18) he undertook work as a common laborer in the oil
 
 *807
 
 fields of this and other States, where he acquired 'the practical knowledge of the oil business in which he has earned his principal livelihood ever since.
 

 “That in the year 1922 at the age of twenty-two (22), he was engaged in the business of drilling and exploring for oil and for the purposes thereof in 1923 helped to organize a company known as 50-50 Jones Oil Interests, Inc., of which he assumed the presidency; that he was at that time experienced only in the drilling, exploration and producing end of the business and accordingly devoted his time almost exclusively to that phase of the said company’s affairs while certain of his retained associates handled the administrative, promotional and financial affairs of the same.
 

 “That as result of certain activities of his said associates for which he, as president of the company, assumed full legal and moral responsibility certain infractions of the United States Postal Laws were alleged to have been committed, the exact nature and extent of which were not and never have been understood fully by defendant; that in answer to indictments resulting therefrom, defendant, without benefit of counsel, appeared in his own behalf, entered pleas of guilty, and was sentenced as set forth in plaintiff's petition.”
 

 [3]
 

 . In this case, this Court held that the defendant who had declared Ms intention •to become a citizen of the United States but had not become such citizen at the time of the election of coroner for Jefferson Parish was eligible to hold such office since he held the requisites for State citizenship.
 

 [4]
 

 . This case held that under the Fourteenth Amendment to the United States Constitution, a woman, who was a citizen of the United States and of the State of Missouri, was not a voter in that State, inasmuch as the Constitution and laws of the State confined the right of suffrage to men alone. Although the Nineteenth Amendment to the United States Constitution prohibits the abridgment by the United States or by any State of the right to vote on account of sox, this case is. cited as authority for the fact that suffrage is primarily a prerogative of the sovereign except where controlled by prohibitions of the Federal Constitution. (The Nineteenth Amendment was declared in a proclamation by the Secretary of State of the United States, dated. August 26, 1920, to have been ratified.)
 

 [5]
 

 . “(a) From and after the effective date of this chapter a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—
 

 *****
 

 “(9) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, violating or conspiring to violate any of the provisions of section 2383 of Title 18, [Rebellion or insurrection] or willfully performing any act in violation of section 2385 of Title 18, [Advocating overthrow of Government] or violating section 2384 of Title 18 by engaging in a conspiracy to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction; or”
 

 8 U.S.C.A. § 1481, as amended September 3, 1954, e. 1256, Sec. 2, 68 Stat. 1146.
 

 [6]
 

 . Examples: Those who are inmates of any charitable institution, except the Soldiers’ Home and the United States Marine Hospital No. 188 at Carville, Louisiana; those actually confined in any public prison; all interdicted persons, and all persons notoriously insane or idiotic, whether interdicted or not. Constitution, 1921, Art. VIII, Sec. 6.
 

 [7]
 

 . In brief, counsel for appellee makes the following pertinent observation: “In tlie first place the Act itself, as well as its present day counterpart in the Code of Criminal Procedure, is probably unconstitutional on its face, in that it attempts to engraft upon Article 8 of the Constitution of Louisiana a new and additional restriction upon the right of franchise without benefit of an amendment to the Constitution itself.”